1    **WO**

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

9    Robert Hagins, et al.,                      No. CV-22-01835-PHX-ROS

10                   Plaintiffs,                  **ORDER**

11   v.

12   Knight-Swift    Transportation   Holdings
     Incorporated,

14                   Defendant.

Plaintiffs filed a class action complaint alleging violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"). (Doc. 1). Plaintiffs allege Defendant breached its fiduciary duties, and that it failed to monitor other fiduciaries, as required by ERISA. Defendant filed a Motion to Dismiss Plaintiffs' complaint. (Doc. 16). For the reasons below, the motion is denied.

                              **BACKGROUND**

**I.     Factual Background**

Plaintiffs allege as follows, with some facts reserved for later discussion. Plaintiffs are participants of the Knight-Swift Transportation Holdings, Inc. Retirement Plan ("the Plan"). (Doc. 1 at ¶ 7). The Plan is a defined contribution retirement plan, in which "participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." (*Id.* at ¶ 2, quoting *Tibble v. Edison Int'l*, 575 U.S. 523 (2015)). Defendant is the Plan Sponsor and Plan Administrator and is thus a fiduciary

of the Plan. (*Id.* at ¶ 26-27).

### A. Breach of Fiduciary Duty

Plaintiffs' first claim alleges Defendant breached its fiduciary duty under ERISA by mismanaging the Plan. Plaintiffs allege two factual bases for this claim.

First, Plaintiffs allege Defendant failed to monitor or control the Plan's recordkeeping expenses paid to a third-party, Principal Life Insurance Company. (*Id.* at ¶¶ 45-81). Defendant allegedly paid direct and indirect recordkeeping expenses, both of which Plaintiffs allege were excessive. Part of these expenses were paid through a practice known as "revenue sharing," where payments are derived from a percentage of participants' individual accounts. (*Id.* at ¶ 50). Thus, Plaintiffs allege the recordkeeping expenses bear no relation to services provided. (*Id.* at ¶ 53). "If asset-based fees are not monitored," Plaintiffs allege, regardless of the work conducted by the recordkeeper, "the fees skyrocket as more money flows into the Plan." (*Id.* at ¶ 55). Plaintiffs allege Defendant had an obligation to monitor and control recordkeeping fees to ensure that such fees remain reasonable. (*Id.* at ¶¶ 57-60). But Plaintiffs allege that while the Plan's assets have "exploded over the past six years," Defendant has failed to reassess the recordkeeping fees, resulting in an "explosion" of payments via revenue sharing as well. (*Id.* at ¶¶ 61, 80).

Second, Plaintiffs allege Defendant breached its fiduciary duty by selecting more expensive share classes participants may choose to invest in instead of low-cost institutional shares of the same funds. (*Id.* at ¶¶ 87-88). Plaintiffs claim the Plan participants are invested in imprudent share classes that are about twice as expensive than other shares of the same funds. (*Id.* at ¶ 89).

### B. Failure to Monitor Other Fiduciaries

Plaintiffs' second claim alleges Defendant, as Plan Sponsor, failed to monitor the fiduciaries in the Retirement/Deferred Compensation Plan Administrative Committee ("Committee"). Plaintiffs allege the Defendant failed to monitor the Committee's oversight of the Plan, resulting in significant losses. (*Id.* at ¶¶ 136-137).

//

**ANALYSIS**

### I.      Motions to Dismiss

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" has not adequately shown the pleader is entitled to relief. *Id.* at 679. Although federal courts ruling on a motion to dismiss "must take all of the factual allegations in the complaint as true, [they] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

### II.     ERISA Claims

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). ERISA plan fiduciaries must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 739 (2022) (quoting 29 U.S.C. § 1104(a)(1)(B)). "[A] fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Id.* at 741 (quoting *Tibble*, 575 U.S. at 530). Plaintiffs' claims here arise out of Defendant's alleged breach of its fiduciary duty of prudence.

"In an ERISA case, 'a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times,' because '[t]hese facts will frequently be in the exclusive possession of the breaching fiduciary.'" *Coppel v. SeaWorld Parks & Entertainment, Inc.*, No. 3:21-CV-01430-RSH-

DDL, 2023 WL 2942462, at *7 (S.D. Cal. Mar. 22, 2023) (quoting *Bouvy v. Analog Devices, Inc.*, No. 19-CV-881-DMS (BLM), 2020 WL 3448385, at *3 (S.D. Cal. June 24, 2020)). "Thus, '[e]ven when the alleged facts do not directly address[] the process by which the Plan was managed, a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'" *Wehner v. Genentech, Inc.*, No. 20-CV-06894, 2021 WL 507599, at *4 (N.D. Cal. Feb. 9, 2021) (quoting *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)).

### A. Judicial Notice and Motion to Strike

Together with its motion to dismiss, Defendant filed various documents as exhibits. Defendant asks the Court to take judicial notice of these documents. (Doc. 16 at 6-7). Defendant argues the Court may consider publicly filed documents, and the Court may consider documents referenced in Plaintiffs' complaint. (*Id.*) Plaintiffs, on the other hand, have moved to strike Exhibits 1-12 attached to Defendant's motion to dismiss. (Doc. 19). Plaintiffs argue the documents were not attached to or relied on in Plaintiffs' complaint. (Doc. 19 at 3). Plaintiffs further contest the accuracy of the information in the exhibits. (Doc. 19 at 5).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. *See Hal Roach Studios, Inc. v. Richard Feiner Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion." *In re LinkedIn ERISA Litig.*, No. 5:20-CV-05704-EJD, 2021 WL 5331448, at *3 (N.D. Cal. Nov. 16, 2021) (citing *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018)). But the Court "may not take judicial notice of disputed facts contained in such public records." *Id.*

The Court agrees with Defendant that the 2021 Form 5500 is referenced numerous

times in Plaintiff's complaint. (See Doc. 1 at ¶¶ 29, 68-69). Additionally, Plaintiffs do reference one comparator plan in the complaint. (*Id.* at ¶¶ 77-78). Accordingly, the Court will take judicial notice of those two Form 5500s (Exhibits 3 and 4).

However, the remaining forms are not specifically referenced in the complaint, and Plaintiffs object to the Court taking notice of them. Many of the cases Defendant cites to support its argument that the Court may take judicial notice of these documents are ones in which the plaintiffs did not oppose such notice. *See, e.g.*, *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *5; *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1066-67 (N.D. Cal. 2017); *Coppel*, 2023 WL 2942462, at *10; *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1191-92 (D. Colo. 2021); *Johnson v. Providence Health & Servs.*, No. C17-1779-JCC, 2018 WL 1427421, at *3, n.5 (W.D. Wash. Mar. 22, 2018); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017).

Since Plaintiffs object to the Court judicially noticing these additional documents, and since Defendant urges the Court to review the documents to address factual disputes, it is inappropriate for the Court to take notice of those documents. *See, e.g.*, *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV-15-1614-JLS, 2016 WL 4507117, at *4 (C.D. Cal. Aug. 5, 2016) (where Plaintiffs object, taking judicial notice only of the existence of the matters of public record, but not one party's interpretation of the record nor the truth of the matter asserted therein). Plaintiffs' motion to strike will be granted in part and denied in part.

## B. Breach of Fiduciary Duty

Defendant argues Plaintiffs have failed to state a claim for breach of fiduciary duty.[1] Plaintiffs' complaint alleges Defendant breached its fiduciary duty of prudence under ERISA in two ways. First, they allege Defendant failed to monitor or control the fees the

---

[1] Defendant argues the plan did not exist for the entire period alleged in the complaint. Therefore, Defendant argues the Court should "dismiss" factual allegations for when the plan did not exist. The Court agrees with Plaintiffs that the proposed class period is better argued and assessed at the class certification stage, rather than dismissing certain facts upon a motion to dismiss. *See, e.g.*, *In re Vaxart, Inc. Securities Litig.*, 576 F. supp. 3d 663, 675 (N.D. Cal. 2021) (denying motion to dismiss but specifying "the class period will presumably need to be adjusted at the class certification stage").

Plan paid to Principal, its recordkeeper. Second, they allege Defendant failed to select prudent share classes. Defendant moves to dismiss this count of the complaint for failure to state a claim under both sets of alleged facts.[2]

ERISA's duty of prudence "demands that fiduciaries act with the type of 'care, skill, prudence, and diligence under the circumstances' not of a lay person, but of one experienced and knowledgeable with these matters." *Tibble v. Edison Int'l*, 729 F.3d 1110, 1133 (9th Cir. 2013) (quoting 29 U.S.C. § 1104(a)(1)(B)), *vacated on other grounds*, 575 U.S. at 523. "A claim for breach of the duty of prudence will 'survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed' or 'that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.'" *Khan v. Bd. Of Directors of Pentegra Defined Contribution Plan*, No. 20-CV-07561 (PMH), 2022 WL 861640, at *6 (S.D.N.Y. Mar. 23, 2022) (quoting *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021)).

### i.    Recordkeeping Fees

Plaintiffs allege Defendant failed to monitor or control the Plan's recordkeeping expenses. (Doc. 1 at ¶¶ 45-81). Plaintiffs allege Defendant paid recordkeeping expenses through both direct and indirect payments. Defendant argues Plaintiffs have alleged no facts to support their calculation of recordkeeping fees being $200 per person, no facts to support the claim that a reasonable fee is $25 per person, and no facts to show that the recordkeeping fees were imprudent in light of the services provided. Defendant takes issue with what they perceive to be Plaintiffs' calculation of direct and indirect recordkeeping expenses, arguing the calculation "appears to be taken out of thin air." Taken as true, however, Plaintiffs' allegations sufficiently state a claim of breach of fiduciary duty. While Defendant asks the Court to believe its interpretation of the Form 5500s rather than Plaintiffs', the Court cannot do so at this stage. Plaintiffs' allegations—that a combination

---

[2] As Plaintiffs argue, they bring a single breach of fiduciary duty claim. Accordingly, the Court considers all of the facts alleged together to determine whether they have sufficiently stated a claim. Nevertheless, for the purpose of clarity, the Court will analyze the two sets of facts separately.

of direct and indirect payments for recordkeeping expanded without any oversight or monitoring by Defendant—is enough to state a claim.

With respect to indirect payments, Defendant used a practice known as "revenue sharing," where payments are derived from a percentage of participants' individual accounts. (*Id.* at ¶ 50). Plaintiffs admit revenue sharing is not per se a violation of ERISA. (*Id.* at ¶ 51). But "[i]f asset-based fees are not monitored," Plaintiffs allege, regardless of the work conducted by the recordkeeper, "the fees skyrocket as more money flows into the Plan." (*Id.* at ¶ 55). Plaintiffs allege Defendant had an obligation to monitor and control recordkeeping fees to ensure that such fees remain reasonable. (*Id.* at ¶¶ 57-60). But Plaintiffs allege that while the Plan's assets have "exploded over the past six years," Defendant has failed to reassess the recordkeeping fees, resulting in an "explosion" of payments via revenue sharing as well. (*Id.* at ¶¶ 61, 80). Plaintiffs allege the total recordkeeping fees currently paid by the Plan is "at least $200 per participant annually, when a reasonable fee ought to be no more than $25 per participant annually." (*Id.* at ¶ 73). Plaintiffs also allege "there is nothing to indicate that Defendant has undertaken a proper [request for proposals] since 2016" to analyze and monitor the suitability of the current recordkeeping fees. (Doc. 1 at ¶ 64).

With respect to direct payments, Plaintiffs allege a particular calculation to deduce the per participant fee, which amounts to $83.81 per participant. (Doc. 1 at ¶ 68). Defendant presumes Plaintiffs' calculation of direct payments for recordkeeping is based on the total fees paid to Principal for administrative services divided by the number of Plan participants with active balances at the end of the year. Defendant asks the Court to look at Form 5500s from previous years, not cited by Plaintiffs in their complaint, to deduce that the recordkeeping fees have not ballooned as Plaintiffs have alleged.[3] With respect to indirect payments, Defendant complains that Plaintiffs conducted "guesswork" to calculate the

---

[3] As discussed above, the Court takes notice only of the existence of these documents. Defendant's arguments about their interpretation are moreover unavailing, since even according to their extrapolations about Plaintiffs' calculations, the per participant recordkeeping fees expanded dramatically from previous years in 2021. (*See* Doc. 16 at 10, n.3).

1    total of $200 per participant fees they allege. But Plaintiffs allege Defendant pays the

2    recordkeeper indirect payments via "revenue sharing" and "float income". (*Id.* at ¶¶ 68,

3    70). At this stage, the Court need not determine the factual accuracy of Plaintiffs'

4    calculation.

5        Plaintiffs also allege "[p]lans of similar size pay annually no more than $25-$30 per

6    participant annually in total for recordkeeping fees," meaning the Plan was charging

7    participants about triple the average amount solely by direct fees. (*Id.* at ¶ 69). Plaintiffs

8    cite a handful of other cases and specifically reference one comparison plan to substantiate

9    this allegation. (*See id.* at ¶¶ 48, 77).  While Defendant complains Plaintiffs do not provide

10   a more specific basis for that comparison, the Court will not decide this question of fact at

11   this stage. Indeed, "[t]he Court cannot conclude that the pleading contains insufficient

12   benchmarks for a meaningful comparison of fees at this stage of the proceedings, where

13   such a conclusion evidently requires the Court to resolve fact disputes." *Khan*, 2022 WL

14   861640, at *7.

15       Defendant argues Plaintiffs' complaint should be dismissed because they fail to

16   allege facts to show the recordkeeping fees were imprudent "in light of the specific services

17   provided." *See Wehner v. Genentech, Inc.*, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9,

18   2021). Defendant asserts Plaintiffs failed to allege particular services provided by the

19   recordkeeper, or any facts to support that "the same services were available for less on the

20   market." *See id.* (citing *White I*, 2016 WL 4502808, at *4)). But Plaintiffs allege what

21   specific services recordkeeping usually includes. (Doc. 1 at ¶¶ 45, 74). Plaintiffs also allege

22   "[n]early all recordkeepers in the marketplace offer the same range of services" (*Id.* at

23   ¶ 46), and that other plans spend less per participant on recordkeeping fees than the Plan

24   here. The natural logical conclusion of those factual allegations is that "the same services

25   were available for less on the market." *See Wehner*, 2021 WL 507599, at *5.

26       Defendant argues Plaintiffs say the only factor that affects recordkeeping fees is the

27   number of plan participants, which they suggest is self-defeating. (Doc. 16 at 13). But

28   Plaintiffs allege, "[t]he cost of providing recordkeeping services *primarily* depends on the

- 8 -

1    number of participants in a plan, rather than the range of services provided to the plan."

2    (Doc. 1 at ¶ 49 (emphasis added)). And while Defendant quibbles with the use of the

3    comparator plan Plaintiffs cite, arguing it has one-fifth as many participants as the Plan

4    here, drawing all reasonable inferences in Plaintiffs' favor, it only serves to highlight

5    Plaintiffs' argument. Plaintiffs continue, "Plans with large numbers of participants can and

6    do take advantage of economies of scale by negotiating a lower pre-participant

7    recordkeeping fee." (*Id.*). The allegations support Plaintiffs' claim that here, where the Plan

8    included thousands of participants, Defendant failed to monitor recordkeeping fees and

9    negotiate for lower fees using their superior bargaining power in accordance with its

10   fiduciary duty.

11                  **ii.    Share Class**

12           Plaintiffs allege a second set of facts to support the breach of fiduciary duty claim.

13   Plaintiffs allege Defendant breached its fiduciary duty of prudence by investing in more

14   expensive share classes instead of lower-cost shares of the same funds. (*Id.* at ¶¶ 87-88).

15   Plaintiffs claim the Plan participants are invested in imprudent share classes that are about

16   twice as expensive than other shares of the same funds. (*Id.* at ¶ 89).[4]

17           The Supreme Court has clarified that "[i]n determining the contours of an ERISA

18   fiduciary's duty, courts often must look to the law of trusts." *Tibble*, 575 U.S. at 528-29.

19   Under trust law, "a trustee cannot ignore the power the trust wields to obtain favorable

20   investment products, particularly when those products are substantially identical—other

21   than their lower cost—to products the trustee has already selected." *Kong v. Trader Joe's*

22   *Co.*, 2022 WL 1125667, at * 1 (9th Cir. Apr. 15, 2022) (quoting *Tibble v. Edison Int'l*, 843

23   F.3d 1187, 1198 (9th Cir. 2016)). The inquiry into whether failure to provide cost-effective

24   investments constitutes a breach of fiduciary duty is context specific. *See id.* (quoting

25   ───────────────────
     [4] Defendant argues Plaintiffs failed to allege they were actually invested in the challenged
26   share classes, meaning they do not have standing to bring a claim for breach of fiduciary
     duty under this set of facts. (Doc. 16 at 14). But Plaintiffs have adequately pled injury,
27   causation, and redressability to support Article III standing for a single claim of breach of
     fiduciary duty. (Doc. 1 at ¶¶ 19-25). And it is well-established that if a plaintiff has Article
28   III standing, he may "seek relief under [ERISA] that sweeps beyond his own injury" with
     respect to the entire Plan. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir.
     2009).

*Hughes*, 142 S. Ct. at 742).

Defendant argues Plaintiffs' share class allegations fail to state a claim for breach of fiduciary duty because Plaintiffs allege nothing about the process Defendant followed to select the share classes. Defendant also argues Plaintiffs' allegations of the availability of "identical" share classes ignores the fact that some share classes allowed for revenue sharing to pay recordkeeping fees, meaning a "higher-cost" share class may be equal or lower-cost in the context of the Plan as a whole. (Doc. 16 at 15).

Plaintiffs allege facts sufficient to survive Defendant's motion to dismiss. Plaintiffs cited numerous share classes where a lower-cost share class of the same fund existed. (Doc. 1 at ¶ 88). Plaintiffs allege that Plan participants had nearly $200 million invested in those identified imprudent share classes, meaning plan participants are paying about double to invest in those share classes than the less expensive options. (*Id.* at ¶ 89). And while Defendant may argue it had reasons for investing in those particular more expensive share classes,[5] its "explanation for the more expensive choice is unavailing at the pleading stage." *Kong*, 2022 WL 1125667, at *1. *See also id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)")).

Ultimately, taken together and accepted as true, Plaintiffs' allegations regarding recordkeeping fees and expensive share classes are sufficient to state a claim for breach of fiduciary duty of prudence. Defendant's motion to dismiss Count 1 will be denied.

## C. Failure to Monitor

Defendant argues Plaintiffs' second count for failure to monitor the Plan's Committee fails because it is only a derivative claim, and Defendant maintains Plaintiffs

---

[5] Similarly, the Court finds unavailing Defendant's argument that Plaintiffs failed to allege Defendant's process for determining investments. "No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information." *Braden*, 588 F.3d at 598.

1    have failed to state an ERISA violation. However, as discussed above, Plaintiffs do state a

2    claim under ERISA. Dismissal is thus unwarranted on this basis. *See Urakhchin*, 2016 WL

3    4507117, at *7.

4         Defendant also argues Plaintiffs did not sufficiently allege Defendant failed to

5    review and monitor the performance of the Committee. The Court disagrees. Plaintiffs

6    alleged Defendant "fail[ed] to monitor and evaluate the performance of the Committee or

7    [to] have a system in place for doing so, standing idly by as the Plan suffered significant

8    losses as a result of the Committee's imprudent actions and omissions," among other

9    things. (Doc. 1 at ¶ 136). More specifically, Plaintiffs allege Defendant "fail[ed] to monitor

10   the processes by which the Plan's expenses and investments were evaluated," and "fail[ed]

11   to remove the Committee as a fiduciary" when its performance was inadequate. (*Id.*). These

12   allegations are sufficient to state a claim. *See Urakhchin*, 2016 WL 4507117, at *7 (denying

13   motion to dismiss claim for failure to monitor where plaintiff alleged failure to monitor or

14   have a system in place for doing so and failure to remove committee members who made

15   imprudent decisions).

16        Accordingly,

17        **IT IS ORDERED** Defendant's motion to dismiss (Doc. 16) is **DENIED**.

18        **IT IS FURTHER ORDERED** Plaintiffs' motion to strike (Doc. 19) is **GRANTED**

19   **IN PART** and **DENIED IN PART**.

20        Dated this 24th day of May, 2023.

21

22

23                                                      Honorable Roslyn O. Silver
24                                                      Senior United States District Judge

25

26

27

28