

Michael McKay (023354)
**MCKAY LAW, LLC**
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Facsimile: (480) 348-3999
Email: mmckay@mckaylaw.us

[Additional counsel identified
in the signature block below]

*Attorneys for Plaintiffs and
the Proposed Class*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Hagins and Tommie Woodard, individually and on behalf of the Knight-Swift Transportation Retirement Plan, <br><br> Plaintiffs, <br><br> vs. <br><br> Knight-Swift Transportation Holdings, Inc., <br><br> Defendant. | Case No.: 2:22-1835-PHX-ROS <br><br> **Plaintiffs' Motion and Memorandum of Points and Authorities in Support of Motion for Class Certification** |

# **TABLE OF CONTENTS**

MOTION ........................................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.   INTRODUCTION ................................................................................................... 1

II.  BACKGROUND FACTS ......................................................................................... 3

III. LEGAL STANDARD ............................................................................................ 11

IV.  ARGUMENT ....................................................................................................... 11

     A.   Rule 23(a) is Satisfied ................................................................................ 11

          1.   Numerosity ......................................................................................... 11

          2.   Commonality ...................................................................................... 12

          3.   Typicality ........................................................................................... 12

          4.   Adequacy ........................................................................................... 13

     B.   Rule 23(b) is Satisfied …........................................................................... 14

          1.   Rule 23(b)(1)(A) is Satisfied ............................................................. 14

          2.   Rule 23(b)(1)(B) is Satisfied ............................................................. 15

     C.   The Court Should Appoint Class Counsel .................................................. 16

V.   MEET AND CONFER CERTIFICATION ............................................................. 17

VI.  CONCLUSION .................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Alcantar v. Hobart Serv.*,
  800 F.3d 1047 (9th Cir. 2015) .................................................. 11

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013).................................................................. 11

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 625 (1997)...................................................... 13, 15

*Cryer v. Franklin Templeton Res., Inc.*,
  No. 16-4265, 2017 WL 4023149 (N.D. Cal. July 26, 2017) ................................. 12

*Cummings v. Connell*,
  316 F.3d 886 (9th Cir. 2003) .................................................. 14

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir 2011) .................................................. 13

*Escalante v. California Physicians' Serv.*,
  309 F.R.D. 612 (C.D. Cal. 2015) .............................................. 11

*Howard v. Shay*,
  100 F.3d 1484 (9th Cir. 1996) .................................................. 1

*In re Citigroup Pension Plan ERISA Litig.*,
  241 F.R.D. 172 (S.D.N.Y. 2006) .............................................. 15

*In re Hyundai and Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) (*en banc*) ................................. 11, 13-14

*In re Northrop Grumman Corp. ERISA Litig.*,
  No. 06-6213-MMM, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) .............2, 14-15

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) .................................................2, 12, 14-15

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008) .............................................2, 12-14

*Koon v. ONEAZ Credit Union*,
  2:16-cv-03939-JWS (D. Ariz.) .................................................. 16

*Leber v. The Citigroup 401(k) Plan Investment Committee*,
  323 F.R.D. 145 (S.D.N.Y. 2017)...............................................14, 15

*LaRue v. DeWolff, Boberg& Assocs.*,
  552 U.S. 248 (2008)............................................................... 1

*Lauderdale v. NFP Ret., Inc.*,
  2022 WL 1599916 (C.D. Cal. Feb. 16, 2022).. .............................2, 12, 13

ii

*Maddock v. KB Homes, Inc.*,
    248 F.R.D. 229 (C.D. Cal. 2007) ........................................................ 11

*Manthangodu v. Todd Davis, et al.*,
    CV2015-054087 (Maricopa County Superior Court) ......................... 16

*Marshall v. Northrop Grumman Corp.*,
    No. 16-6794-AB, 2017 WL 6888281 (C.D. Cal. Nov. 2, 2017) ......... 2, 12, 13, 15

*Mass Mutual Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) .............................................................................. 1

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ............................................................ 13

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
    823 F.3d 948 (9th Cir. 2016) .............................................................. 15

*Munro v. Univ. of S. California*,
    No. 2:16-CV-06191-VAP-EX, 2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) . 2, 12

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ............................................................................. 15

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) .............................................................. 13

*Tibble v. Edison Int'l*,
    843 F.3d 1187 (9th Cir. 2016) ........................................................... 1, 3

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................... 12, 13

**Codes**

29 U.S.C. § 1104(a) ...................................................................... 1, 12

29 U.S.C. § 1109(a) ...................................................................... 1, 14

§ 1132(a)(2) ...................................................................................... 1

**Rules**

Fed. R. of Civ. P. 23(a) ............................................................... *passim*

Fed. R. Civ. P. 23(b) ................................................................... *passim*

Fed. R. Civ. P. 23(g) ......................................................................... 16

### MOTION

Robert Hagins and Tommie Woodard (collectively, "Plaintiffs") respectfully move for class certification. Plaintiffs satisfy the requirements of Federal Rule of Civil Procedure 23(a) and Rule 23(b)(1)(A) and (B). Pursuant to Rule 23, Plaintiffs, in their role as participants in the Knight-Swift Transportation Holdings, Inc. Retirement Plan ("Plan"), seek certification of the following class: All persons who were participants in or beneficiaries of the Plan, at any time between October 26, 2016 and the present.

This motion is based on the accompanying Memorandum of Points and Authorities, Declaration of Robert Hagins ("Hagins Decl."), Declaration of Tommie Woodard ("Woodard Decl."), Declaration of Michael McKay ("McKay Decl."), Declaration of Ty Minnich ("Minnich Decl."), the accompanying exhibits, the Court's file in this action, and such other evidence as may be presented at a hearing on the motion. A proposed order granting this motion is submitted herewith.

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs assert that Knight-Swift Transportation Holdings, Inc. ("Defendant") breached ERISA's strict fiduciary duties by causing the Plan to select and retain underperforming and excessively expensive investment options rather than prudent investments for the Plan's investment menu and by also failing to monitor and control excessive compensation paid by all Plan participants to the Plan's recordkeeper. *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (*en banc*, quoting *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (Defendant's ERISA fiduciary duties to the Plan are the "highest known to law."); *see also* 29 U.S.C. §1104(a).

As participants in the Plan, Plaintiffs are authorized by ERISA to bring suit "in a representative capacity on behalf of the plan as a whole." *Mass Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *see* 29 U.S.C. § 1109(a), § 1132(a)(2). "On their

face, §§ 409(a) and 502(a)(2) permit recovery of all plan losses caused by a fiduciary breach." *LaRue v. DeWolff, Boberg& Assocs.*, 552 U.S. 248, 261 (2008).

In light of the inherently representative nature of the claims at bar, involving plan-wide conduct and plan-wide remedies, courts have routinely granted class certification, reasoning that ERISA fiduciary breach claims are "paradigmatic examples" of claims that should be certified under Rule 23(b)(1). *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009).[1]

In addition, it is noteworthy that the ERISA breach of fiduciary claims in this case are very similar to those that were at issue in *Gotta v. Stantec Consulting Services, Inc.,* 20-cv-01865-GMS (D. Ariz.). Plaintiffs' counsel here represented the plaintiffs in the *Gotta* matter as well. Plaintiffs filed a motion for class certification in the *Gotta* matter that is similar to the motion in this case. The Honorable G. Murray Snow presided over the *Gotta* matter. Judge Snow granted the motion for class certification in *Gotta* (and later granted final approval of a class action settlement in *Gotta.*) *See Gotta v. Stantec Consulting Services, Inc.,* Order Granting Class Certification (Dkt. No. 69) and Order and Final Judgment (Dkt. No. 83).

This Court should reach the same result here with respect to Plaintiffs' Motion. Plaintiffs are pursuing claims on behalf of their retirement Plan to obtain remedies due to their Plan. The Plan's injuries, and hence the losses to participants' individual accounts, resulted from the same course of plan-level conduct. All participants share a common

---

[1] *See also Lauderdale v. NFP Ret., Inc.*, No. SACV21301JVSKESX, 2022 WL 1599916, at *7 (C.D. Cal. Feb. 16, 2022) (finding certification is appropriate under Rule 23(b)(1)(A)); *Munro v. Univ. of S. California*, No. 2:16-CV-06191-VAP-EX, 2019 WL 7842551, at *9 (C.D. Cal. Dec. 20, 2019) ("Courts in the Ninth Circuit also routinely certify ERISA class actions under Rule 23(b)(1)(B)."); *Marshall v. Northrop Grumman Corp.*, No. 16-6794-AB, 2017 WL 6888281, at *9 (C.D. Cal. Nov. 2, 2017) (same); *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213-MMM, 2011 WL 3505264, at *18 (C.D. Cal. Mar. 29, 2011) (finding that requirements of Rule 23(b)(1)(B) were satisfied); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111–12 (N.D. Cal. 2008) ("Most ERISA class action cases are certified under Rule 23(b)(1)").

interest in establishing Defendant's liability and obtaining a remedy for the Plan. The evidence needed to establish Defendant's liability and the Plan's losses is exclusively common proof. In addition, any equitable and other relief, such as surcharges, reformation of the Plan, or removal of the fiduciaries, affect all participants. Thus, as explained further below, the Court should certify this action as a class action under Rule 23(b)(1), appoint each of the named Plaintiffs as a class representative, and appoint McKay Law, LLC; Morgan & Morgan, P.A.; and Wenzel Fenton Cabassa, P.A. as class counsel.

## II.    BACKGROUND FACTS

**Overview of the Plan:** The Plan is a defined contribution or 401(k) plan within the meaning of 29 U.S.C. § 1002 (34). Complaint (Dkt. No. 1), ¶ 16. Defendant is a fiduciary to the Plan. *Id.* ¶¶ 26, 37-38. Defendant has responsibility for prudently selecting and monitoring the Plan's investments. Defendant also has responsibility to defray Plan expenses and to ensure that Plan expenses are not excessive. *Id.* ¶¶ 82-92.

**Defendant Selected Imprudent Investments for the Plan:** Retirement plans with nearly a billion dollars of assets under management (like the Plan here) qualify for the lowest-cost investment options available on the market. Retirement plan participants paying more money for investments than they should "lose not only the money spent on higher fees, but also 'lost investment opportunity;' that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble*, 843 F.3d at 1198.

Defendant imprudently packed the Plan's investment menu with high priced retail class shares of investment products when the identical investment products were available in much lower priced retirement class shares. The following imprudent high priced retail class shares Defendant selected for the Plan are identified in Plaintiffs' Complaint:

■    American Balanced Fund Class A with a 56 basis point fee (rather than Class R6 with a 25 basis point fee);

- American Small Cap World Fund Class A with a 102 basis point fee (rather than Class R6 with a 65 basis point fee);

- Cap World Growth Class A with a 75 basis point fee (rather than Class R6 with a 40 basis point fee);

- EuroPacific Growth Class A with a 80 basis point fee (rather than R6 with a 46 basis point fee);

- American Government Securities Fund Class A with a 62 basis point fee (rather than Class R6 with a 22 basis point fee);

- Investment Company of America Fund Class A with a 58 basis point fee (rather than Class R6 with a 27 basis point fee);

- New Economy Fund Class A with a 74 basis point fee (rather than Class R6 at 41 basis point fee);

- New Perspective Fund Class A with a 72 basis point fee (rather than Class R6 at 41 basis point fee);

- Washington Mutual Investment Fund Class A at 56 basis point fee (rather than Class R6 with a 26 basis point fee); and

- JP Morgan Small Cap Class R% at 85 basis point fee (rather than Class R6 at 74 bps).

Complaint, ¶ 88.

There is currently roughly <u>$270 million</u> of retirement savings invested through the Plan in high-cost retail class shares of investment products when identical low-cost retirement class shares are available to the Plan. Defendant's imprudence cost and continues to cost Plan participants <u>millions</u> of dollars in retirement savings. *Id.*

**Principal Received Excessive Compensation:** Principal Life Insurance Company ("Principal") is the Plan's recordkeeper. *Id.* ¶ 17. In that capacity, Principal provides administrative services to the Plan. *Id.* ¶¶ 45-49. Recordkeepers for plan's similar to the Plan here charge $25 per participant per year for all services. *Id.* ¶ 69. But Defendant causes

the Plan and its participants to pay Principal way more than what a prudent fiduciary would allow. Indeed, as disclosed in the Plan's 5500 disclosure for the year ending 2021, as filed with the Department of Labor ("DOL"), the Plan paid Principal $1,209,051 in "direct" compensation during 2021. *See* McKay Decl. ¶ 19, Exhibit 8, Schedule C, Paragraph 2. The 5500 disclosure further provides that there were 14,426 Plan participants with account balances at the year ending 2021. *Id.*, Part II, Paragraph 6(g). Accordingly, Defendant disclosed (under penalty of perjury) that the Plan paid Principal $83.81 per participant in "direct" compensation alone for recordkeeping services in 2021. ($1,209,051 / 14,426 = $83.81).

The Plan's 5500 disclosures for the other years during the relevant time period likewise show the "direct" compensation alone that Principal receives from the Plan has been excessive and unreasonable throughout the entire class period. *Id.* ¶¶ 14-21.

Defendant also caused the Plan to pay Principal "indirect" compensation. Complaint, ¶¶ 68-73. Indeed, the Plan's 5500 disclosures during the relevant time period confirm that Principal receives "indirect" compensation on top of its "direct" compensation. *Id.* But Defendant does not even attempt in its 5500 disclosures to identify the actual amount of "indirect" compensation Principal receives from the Plan. *Id.* That is because Defendant has not tracked, monitored, negotiated, controlled – or even knows the amount of "indirect" compensation Principal receives from the Plan. *Id.*

Principal receives "indirect" compensation in two material ways: (1) via revenue sharing and (2) via float on money deposited and/or withdrawn from the Plan. Principal receives indirect revenue sharing compensation from investment companies who have their investment products on the Plan's menu of investments; known as "revenue sharing." Complaint ¶¶ 50-57, 61, 70-71. That is, Principal keeps for itself a portion of the money invested by Plan participants in the Plan as one form of indirect compensation. Principal also receives compensation from the Plan on all Plan participant money transferred into or out of the Plan while Plan participant money sits in Principal's clearinghouse account (often

for several days and there is nearly $1 billion in the Plan, with hundreds of millions of dollars going into and out of the Plan each year). That is, Principal takes this money, invests it, and keeps the investment earnings for itself as another form of indirect compensation; known as "float compensation." Complaint, ¶¶ 59, 68, 70, 78. Defendant's witnesses testified in depositions that they have no real idea how much Principal pockets in connection with revenue sharing or float.

Making matters worse, Plan assets have skyrocketed since 2016 (the beginning of the statute of limitations period). In December 2016, the Plan had about $192 million in assets under management. Complaint, ¶ 61; *see also* McKay Decl. ¶ 14. Today, the Plan has nearly $1 billion in assets under management. *Id.* ¶ 21. Principal's "indirect" compensation is tied to the assets in the Plan and therefore has skyrocketed as assets in the Plan have increased. The total amount of compensation paid by the Plan (both through direct and indirect payments) currently is at least $100 per participant annually, when a reasonable total amount ought to be no more than $25 per participant annually. *Id.* ¶ 73.

**Deposition Testimony Confirms ERISA Fiduciary Breaches:** Plaintiffs have so far deposed seven witnesses, including Defendant and several of the Plan's Committee Members who were appointed by Defendant to administer the Plan. The deposition testimony confirms massive ERISA fiduciary duty breaches. Plaintiffs are restricted by the 17-page count limitation in connection with this Motion. The deposition testimony below provides the Court with a *small* glimpse of the admissions that standing alone in some instances are enough to prove ERISA fiduciary breaches, but collectively demonstrate a colossal failure by Defendant.

### 1. Committee Members Have No Meaningful Fiduciary Experience or Training

Plan Committee Members who were deposed testified they had no meaningful experience, education, or training concerning ERISA's fiduciary duties before being appointed to the Committee for the Plan. McKay Decl. ¶¶ 24, and 26, Exhibits 13 and, 15, Vaughan Tr. at pages 11, 15-17: ("Q: Have you had any formal education pertaining to

satisfaction of ERSIA's fiduciary duties: A: No."); Maccano Tr. at pages 79-80 ("Q: Do you have any formal education pertaining to administering a 401(k) plan? [Objection to form.] A: I have a degree in business administration. I don't even know if 401(k) plans were around then.")

Some of the Committee Members claimed to have received some training after being appointed as a Plan fiduciary, but testified they could not recall the substance of the alleged training. *Id.* at ¶¶ 23 and 26, Exhibit 15, Vaughan Tr. at pages 10-15; Monti Tr. at page 18 (Q: "Do you recall the substance of any training that Kathleen provided? A: Not precisely.")

It was imprudent for Defendant to appoint Committee Members as fiduciaries for the Plan without adequate experience, training, or education. And it was imprudent for Defendant to fail to provide any meaningful training or education to its Committee Members after they were appointed as fiduciaries. The complete lack of adequate experience, education, and training doomed them to fail.

### 2. Committee Members Abdicated their ERISA Duties

Committee Members abdicated their fiduciary duties to Principal. Indeed, Committee Members testified they believe that Principal is a Plan fiduciary. *Id.* ¶¶ 25-26, Exhibits 14-15, Vaughan Tr. at page 50 (Q: Do you know whether the recordkeeper is a fiduciary to the plan? A: I believe that the recordkeeper is a fiduciary, sir."); Cantrill Tr. at pages 39-40 (Q: Do you believe Principal is a fiduciary to the plan? A: I do.)

This is important because Principal is *not* a Plan fiduciary. Principal is a for-profit company seeking to maximize its revenues from the Plan. Defendant is supposed to be negotiating with Principal on behalf of the Plan and seeking to limit Principal's compensation from the Plan. But none of the Committee Members did that here. So, the facts played out exactly as one would expect. Principal ended up receiving wildly excessive compensation from the Plan. Plan participants cannot individually negotiate Principal's compensation. They must rely on Defendant to do so. Defendant failed. This is exactly why

ERISA's fiduciary duties exist and what the imposition of these statutory duties seek to prevent.

### 3.    Committee Members Lack Basic Knowledge of Investments

Committee Members lack basic knowledge of investments that a prudent fiduciary for a billion-dollar retirement plan would have. For example, Todd Cantrill testified that he does not know what a collective trust fund is. *See* McKay Decl. ¶ 25, Exhibit 14, Cantrill Tr. page 52, (Q: Do you know what a collective trust fund is? A: I do not.") There is more than $50 million of Plan participant retirement savings invested in collective trust funds through the Plan. *Id.* ¶ 20. And Committee Members do not even know what a collective trust fund is.

By way of another example, the Plan includes a stable value fund on its menu of investments. The stable value fund has roughly $25 million invested in it. *Id.* But Cantrill and several other Plan fiduciaries testified that they do not even know what a stable value fund is. *See* McKay Decl., ¶¶ 23, 25, 26, Exhibits 12, 14, 15. Cantrill Tr. at page 54; Vaughan Tr. page 16; Monti Tr. pages 46-53 (testifying that he does not know what a stable value fund is and providing inaccurate testimony about how stable value funds operate and testifying that she believes the stable value fund offered on the Plan's investment menu is offered by Morgan Stanley when it is actual a Prudential stable value fund.) Selecting prudent investments for inclusion on a retirement plan's investment menu is one of the most important responsibilities of plan fiduciaries. Here, the Plan fiduciaries lack basic knowledge of investments in general and lack specific knowledge of the actual investments on the Plan's investment menu.

Cantrill also testified that while he was a Committee Member that he never did anything to monitor the fees and expenses of investments offered on the Plan's investment menu. *Id.,* Exhibit 14, Cantrill Tr. pages 52-53. Committee Members also testified in wildly incorrect ways about fees and expenses of investments offered on the Plan's investment menu. For example, Cheryl Maccano, who was the Committee Chairperson from 2017 to

2023, testified that 12b-1 fees charged by investments on the Plan's investment menu are paid to Plan participants. *Id.* ¶ 24, Exhibit 13, Maccano Tr. pages 28-29 and 82. This testimony is inaccurate. Plan participants do not receive 12b-1 fees. Principal receives the 12b-1 fees. This would be obvious to anyone even remotely familiar with investment fees and expenses – but ought to especially be obvious to a fiduciary charged with prudently protecting nearly $1 billion of other people's retirement savings. Defendant does not even know these basic elements about how Principal is compensated, much less how much excessive compensation Defendant is causing the Plan to allow Principal to pocket.

By way of an additional egregious example, Plaintiffs allege that Defendant selected for the Plan imprudent retail share classes of investments costing the Plan millions in losses. Todd Cantrill testified that he does not even know what a share class is, and that during his time as a Committee Member he has no memory of other Committee Members ever discussing share classes of investments offered on the Plan's investment menu. *Id.,* ¶ 25, Exhibit 14, Cantrill Tr. page 46.

Several Committee Members testified that they thought it was prudent to include high-priced retail class share investment products on the Plan's investment menu because these share classes were "grandfathered," "no longer offered," and "other investors can't get in that now," and they believed that the Plan was getting some special deal by including the high-cost retail class share investments on the Plan's investment menu. *Id.,* ¶ 24, Exhibit 13, Maccano Tr. page 26. However, all of the high-cost retail class share investments on the Plan's investment have been available to the public during the entirety of the relevant time period. The Plan's fiduciaries were apparently duped into believing that they were getting a "special" deal. Testimony from Plan fiduciaries about the share classes on the Plan's investment menu is more evidence of imprudence and colossal fiduciary breaches.

### 4. Committee Members Lack Knowledge of Compensation Paid to Principal

Committee Members testified they do not know the amount of compensation Principal receives from the Plan. *Id.,* ¶¶ 22, 23, 24, Exhibits 11-13, Monti Tr. at page 93; Maccano

9

Tr. pages 69-71. Committee Members have no knowledge of how Principal's compensation was negotiated – or even if it was negotiated at all. *Id.*, ¶ 22, Exhibit 11. Principal's compensation agreement with the Plan entitles Principal to collect as compensation, "finders fees." *Id.* But Defendant's 30b6 witness did not even know what finders fees are or how much compensation Principal receives in such fees. *Id.* Committee members do not how much "indirect" compensation Principal receives from the Plan. *Id.*

Principal's fee agreement with the Plan entitles Principal to collect all of the interest on Plan participant's money that is being transferred into or out of the Plan while the money sits in Principal's clearinghouse account (typically between 1-4 days), but Committee Members did not even know about this source of Principal's compensation or how much Principal earns on Plan participant money. *Id.* ¶ 25, Exhibit 14, Cantrill Tr. page 32 ("Q: Do you know whether Principal received compensation from the Plan via float? A: I don't know what float is. Q: Was float ever discussed during committee meetings? [Objection to form] A: I can't say I'm familiar with float.")

**5.    Committee Members Failed to Even Read Plaintiffs' Complaint**

Plaintiffs' Complaint was filed on October 26, 2022 – nearly two years ago. The Complaint is freighted with allegations that Defendant breached its ERISA fiduciary duties to the Plan. However, Committee Members did not even bothered to read the Complaint until just before their depositions – if at all. *Id.* ¶ 25, Exhibit 14, Cantrill Tr. pages 5-6, ("Q: Have you seen a copy of the complaint that was filed in this case? A: Would this be like the original complaint of – I'm going to say no, I don't think I've seen the original complaint.); *see also Id.*, ¶ 22, Exhibit 11, Stewart Tr. page 8, testifying he first saw the Complaint a week before his deposition; ¶ 27, Exhibit 16, Flanagan Tr. page 8, testifying he first saw the complaint in June or July of 2024; ¶ 24, Exhibit 13, Maccano Tr. pages 8-10,, (testifying she has never read the entire Complaint); *see also* ¶ 23, Exhibit 12, Monti Tr. pages 38-39 (testifying she never received a copy of the Complaint.)

**Plaintiffs' Testifying Expert Opines that Defendant's ERISA Breaches Impacted the Plan as a Whole:** Plaintiffs retained Mr. Ty Minnich to offer expert witness testimony concerning whether Defendant breached ERISA's duties of prudence. Mr. Minnich will also offer testimony concerning millions of dollars in losses Defendant caused the Plan. For purpose of the instant motion, Mr. Minnich opines that all of Defendant's actions and omissions at issue in this lawsuit impacted the Plan as a whole. *See* Minnich Decl. ¶ 4. Mr. Minnich's expert witness testimony supports Plaintiffs' motion for class certification.

## III.  LEGAL STANDARD

To obtain class certification, Plaintiffs must show that the class meets the four prerequisites of Fed. R. Civ. P. 23(a), which are: "numerosity, commonality, typicality, and adequacy" and Plaintiffs must show that the class "fall[]s within one of the three types specified in Rule 23(b)." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (*en banc*). Although the Rule 23 analysis must be "rigorous," a court may not "engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* The Court's objective at this stage "is merely 'to select the method best suited to adjudication of the controversy fairly and efficiently.'" *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quoting *Amgen*, 568 U.S. at 460).

## IV.  ARGUMENT

### A.  Rule 23(a) is Satisfied

#### 1.  Numerosity

As of December 31, 2023, there are 23,547 Plan participants with active account balances. McKay Decl. ¶ 21, Exhibit 10. Thus, the class "is so numerous that joinder of all members is impracticable." *See Escalante v. California Physicians' Serv.*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (ruling that "even presuming a class of 19, numerosity is met");

1   *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 237 (C.D. Cal. 2007) (finding a minimum of

2   100 members sufficient).

3                   **2.      Commonality**

4          Commonality concerns "the capacity of a class wide proceeding to generate common

5   answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564

6   U.S. 338, 350 (2011). Because ERISA fiduciary breach claims are actions on behalf of a

7   plan regarding duties owed at the plan level, commonality "is quite likely to be satisfied."

8   *In re Schering*, 589 F.3d at 599 n.11; *see also* 29 U.S.C. §1104(a)(1) ("a fiduciary shall

9   discharge his duties with respect to a plan").

10         Defendant owed fiduciary duties to the Plan. Plaintiffs allege that Defendant breached

11  its fiduciary duty to the Plan as a whole and, hence, all class members. Courts in similar

12  ERISA cases routinely find that issues of fiduciary status, breach, and plan losses are

13  common questions. *See In re Schering*, 589 F.3d at 596–97 (commonality "clearly satisfied"

14  based on questions of whether defendants were fiduciaries, whether they breached their

15  duties by failing to monitor and remove imprudent fund, and whether breaches caused plan

16  losses); *Lauderdale*, 2022 WL 1599916, at *6 (finding commonality in ERISA class action

17  where "[a]ll of the evidence presented to prove Plaintiffs claim will be based on the actions

18  taken by Defendants on behalf of the Plan."); *Munro*, 2019 WL 7842551, at *4

19  (commonality satisfied in ERISA class action where "the essential question … is whether

20  Defendants breached their fiduciary duties and thereby caused losses to the Plans.").[2]

21

22  _____

23  [2] *See also Marshall*, 2017 WL 6888281, at *6 ("The question of whether Defendants

24  breached their fiduciary duties to the Plan are common to all Plan participants' claims and

    will generate answers common to all of the putative class members.") *Cryer v. Franklin

25  Templeton Res., Inc.*, No. 16-4265, 2017 WL 4023149, at *5 (N.D. Cal. July 26, 2017)

    (commonality satisfied because all participants "were provided the same investment

26  options" and recovery would benefit" the Plan as a whole."); *Kanawi*, 254 F.R.D. at 109

    ("[T]he common focus is on the conduct of Defendants: whether they breached their

27  fiduciary duties to the Plan as a whole by paying excessive fees" and "whether they made

    imprudent investment decisions").

Because "[t]here is no need to solicit individualized evidence from each participant to answer the common questions that will resolve many of the key issues in this case," the commonality requirement is satisfied here. *Lauderdale*, 2022 WL 1599916, at *6.

### 3. Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). Rule 23(a)'s commonality and typicality requirements "tend to merge." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (quoting *Dukes*, 564 U.S. at 349 n.5).[3] As shown above, "the key issues in this case concern Defendants' conduct, not individual actions taken by the Plaintiffs." *Lauderdale*, 2022 WL 1599916, at *6. Accordingly, Plaintiffs have satisfied Rule 23(a)'s typicality requirement.

### 4. Adequacy

The adequacy requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent," and also factors in "competency and conflicts of class counsel." *Hyundai*, 926 F.3d at 566 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 626 n.20 (1997)). The adequacy determination involves "two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Hyundai*, 926 F.3d at 566 (quoting *Hanlon*, 150 F.3d at 1020).

---

[3] *See also Marshall*, 2017 WL 6888281, at *7 (allegations of ERISA fiduciary breaches satisfy typicality requirement"); *Kanawi*, 254 F.R.D. at 110 ("In light of the representative nature of a suit filed pursuant to [§1132](a)(2) and the injunctive relief sought … Plaintiffs' claims are sufficiently typical of those of other class members.");

Hypothetical or "speculative conflicts" among class members do not defeat class certification. *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003).

Plaintiffs' interests are aligned with the class members' interests because they all are acting on behalf of the Plan in seeking to enforce the fiduciary duties that Defendant owes to the Plan as a whole and to recover remedies that are due the Plan. *See* 29 U.S.C. §1109(a); *Russell*, 473 U.S. at 142 n.9. Because Plaintiffs are pursuing claims on behalf of the Plan and not individual claims, there are no conflicts between Plaintiffs' individual interests and the interests of absent class members. To the contrary, the interests of all Plan participants are aligned. *See Krueger*, 304 F.R.D. at 574–75; *Northrop*, 2011 WL 3505264, at *14 (lack of conflicts in similar case was undisputed).

Plaintiffs' counsel have a demonstrated track record of prosecuting this action successfully on behalf of the class. Plaintiffs' counsel have demonstrated they are committed to devoting all necessary resources to vigorously prosecuting this action on behalf of the class. McKay Decl., ¶¶ 8-12.

### B. Rule 23(b) is Satisfied

Having satisfied the four Rule 23(a) requirements, Plaintiffs need only satisfy one subsection of Rule 23(b). *See Hyundai*, 926 F.3d at 556. Plaintiffs seek certification under Rule 23(b)(1) because "most ERISA claims are certified under Rule 23(b)(1)," since they are "paradigmatic" Rule 23(b)(1) claims. *Northrop*, 2011 WL 3505264, at *15 (citing *Kanawi*, 254 F.R.D. at 111, and *In re Schering*, 589 F.3d at 604); *Leber v. the Citigroup 401(k) Plan Investment Committee*, 323 F.R.D. 145, 165 (S.D.N.Y. 2017); *Krueger*, 304 F.R.D. at 575–78. Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members." *Northrop*, 2011 WL 3505264, at *15 (quoting *Kanawi*, 254 F.R.D. at 111).

### 1. Rule 23(b)(1)(A) is Satisfied

Rule 23(b)(1)(A) "takes in cases where the [defendant] is obligated by law to treat the members of the class alike" or "must treat all alike as a matter of practical necessity."

*Amchem*, 521 U.S. at 614 (citation omitted). The Ninth Circuit holds that ERISA breach of fiduciary duty claims are properly certified under Rule 23(b)(1)(A). *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965 (9th Cir. 2016). In discharging their duties to the Plan, Defendant, as a fiduciary, is obligated to treat all Plan participants (and all class members) alike. *See In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (finding Fed. R. Civ. P. 23(b)(1)(A) satisfied "because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'") Thus, class certification is consistent with and satisfies Rule 23(b)(1)(A).

## 2.     Rule 23(b)(1)(B) is Satisfied

"Classic examples" of Rule 23(b)(1)(B) claims include "actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or beneficiaries, and which require an accounting or like measures to restore the subject of the trust." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999) (quoting Fed. R. Civ. P. 23, Adv. Comm. Notes, 1966 Amends., subd. (b)(1)(B)). In such cases, the "shared character of rights claimed or relief awarded entails the risk that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Id.* at 834.

Because of the trust-like nature of a defined contribution plan, with fiduciary duties owed to the plan and not to particular individuals, courts have routinely certified similar claims as Rule 23(b)(1)(B) class actions. *See In re Schering*, 589 F.3d at 604 (holding "Rule 23(b)(1)(B) is clearly satisfied"); *Northrop*, 2011 WL 3505264, at *15–18 (same); *Marshall*, 2017 WL 6888281, at *9–10 (same); *Leber*, 323 F.R.D. at 165 & n.17 ("Most courts that have certified ERISA class actions alleging breaches of fiduciary duties have done so under Rule 23(b)(1)(B)."

A resolution of the claims here will extend to all Plan participants, and even assuming *arguendo* absent Plan participants were not barred by res judicata from litigating the same claims, as a "practical matter" a prior adjudication of whether Defendant breached its duties

to the Plan would at minimum influence a subsequent court's adjudication of the same claims. Thus, Plaintiffs satisfy both Rule 23(b)(1)(A) and (b)(1)(B).

**C.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel**

When certifying a class, a court must appoint class counsel. *See* Fed. R. Civ. P. 23(g). The Court should consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Prior to filing this action, Plaintiffs' counsel conducted a lengthy investigation of potential claims and legal issues. McKay Decl. ¶ 8. Plaintiffs' counsel have extensive experience handling ERISA breach of fiduciary duty class actions. Indeed, Plaintiffs' counsel have successfully secured over $100 million for their clients in court approved ERISA class action settlements. *Id.* ¶¶ 2-3.

Further, Plaintiffs' counsel, Michael McKay, is one of the relatively few Arizona attorneys to try a class action lawsuit pending in the District of Arizona to verdict. *Id.* ¶ 5. The class prevailed on all claims; obtained a complete recovery, including liquidated damages, attorneys' fees, and costs. *Id.* Mr. McKay has been complimented by judges in courts across the country, including by judges in this District, for his work representing plaintiffs in class actions. For example, Mr. McKay represented a class in *Koon v. ONEAZ Credit Union,* 2:16-cv-03939-JWS (D. Ariz.). Judge Sedwick approved a class settlement in that case and during the final approval hearing stated:

> Again, thank you very much for making this so well organized and so swiftly drawn to a conclusion. I think it's commendable. Not all of the lawyers who appear in front of this Court do such a good job.

McKay Decl. ¶ 6, Exhibit 1. By way of yet another example, Mr. McKay represented a class in *Manthangodu v. Todd Davis*, CV2015-054087 (Maricopa County Superior Court) during the final settlement hearing, while approving the class settlement valued at

approximately $18 million after hearing testimony from Justice Stanley Feldman (Ret.) who acted as a mediator in the case, Judge Dawn Bergin stated, "I appreciate the thoroughness of the materials that have been submitted to me. They're very helpful. …I am very pleased with the way this has turned out." *Id.* ¶ 7, Exhibit 2.

In addition to their work investigating the class claims in this case, successfully prosecuting this case thus far on behalf of the putative class, and successfully prosecuting similar claims on behalf of other ERISA classes; Plaintiffs' counsel aver they have the resources to vigorously litigate this case on behalf of the class and they are committed to continuing to do so. *Id.* ¶ 12. For these reasons, the Court should appoint McKay Law LLC, Morgan & Morgan, P.A., and Wenzel Fenton Cabasa, P.A. as Class Counsel.

## V.    MEET AND CONFER CERTIFICTION

In the spirit of good faith, Plaintiffs' counsel participated in telephonic conferences with Defendant's counsel and requested Defendant to stipulate to class certification or to agree that the motion could be filed as unopposed. *Id.*  Defendant would not so stipulate.

## VI.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request: (i) that the Court certify all of Plaintiffs' claims as a class action under Fed. R. Civ. P. 23(b)(1), or alternatively under Rule 23(b)(2); (ii) that the Court appoint as class representatives Plaintiffs Robert Hagins and Tommie Woodard, and (iii) appoint McKay Law LLC, Morgan & Morgan, P.A., and Wenzel Fenton Cabasa, P.A.

Dated: October 23, 2024              */s/ Michael C. McKay*
                                                  Michael C. McKay (023354)
                                                  **MCKAY LAW, LLC**
                                                  5635 N. Scottsdale Road, Suite 117
                                                  Scottsdale, Arizona 85250
                                                  Telephone: (480) 681-7000
                                                  Facsimile: (480) 348-3999
                                                  Email: mmckay@mckaylaw.us

1

2

3

4

Marc R. Edelman, Esq. (Pro Hac Vice)
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Email: MEdelman@forthepeople.com

5

6

7

8

9

10

Brandon J. Hill, Esq. (Pro Hac Vice)
Luis A. Cabassa, Esq. (Pro Hac Vice)
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Telephone: (813) 224-0431
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
*Attorneys for Plaintiffs and the proposed Class*

11

12

**CERTIFICATE OF SERVICE**

13

14

15

I certify that on this 23rd day of October, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registered users.

16

17

18

/s/ *Michael C. McKay*

19

20

21

22

23

24

25

26

27

MOTION FOR CLASS CERTIFICATION