Mark Ogden; AZ Bar No. 017018
MOgden@littler.com
Melissa L. Shingles; AZ Bar No. 032645
MShingles@littler.com
LITTLER MENDELSON, P.C.
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
Telephone: 602.474.3600
Facsimile: 602.926.8949

[*Additional Counsel Listed on Signature Page*]

Attorneys for Defendant

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Robert Hagins and Tommie Woodard, individually and on behalf of the Knight-Swift Transportation Retirement Plan, <br><br> Plaintiffs, <br><br> vs. <br><br> Knight-Swift Transportation Holdings, Inc., <br><br> Defendant. | Case No. 2:22-CV-01835-PHX-ROS <br><br> **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

Plaintiffs' Motion for Class Certification ("Motion") fails to carry their burden to show that Rule 23's requirements are met for the putative class of "[a]ll persons who were participants in or beneficiaries of the [Knight-Swift Transportation Holdings, Inc. Retirement Plan ("Knight-Swift Plan")] at any time between October 26, 2016 and the present [(the "Proposed Class Period")]." The Motion fails to alert the Court to the fact that there is no consistent, single "plan" at issue during the Proposed Class Period. To the contrary, the Knight-Swift Plan did not exist until January 1, 2019, and the predecessor plans which were merged together to form the Plan had separate fiduciary committees that made independent fiduciary decisions, engaged in independent courses of conduct, used different recordkeepers with different recordkeeping fee arrangement and rates, and had different plan investment lineups, the vast majority of which did not include any of the challenged investment funds in this case.

Moreover, the specific investment histories of the named Plaintiffs evidence a lack of damage from their articulated claims as well as divergent interests that demonstrate flaws in the adequacy, commonality, and typicality of the putative class. Plaintiff Woodard never invested in any of the funds Plaintiffs claim were imprudent, and Plaintiff Hagins never invested in three of those funds, so there is no question Plaintiffs lack standing to challenge the inclusion of three of the challenged funds.  Moreover, analysis of participant-level data shows that ***Plaintiff Hagins and a majority of the putative class members were better off at all times*** investing in the challenged funds than the alternative funds Plaintiffs claim were prudent; thus, they suffered zero injury with respect to these funds. The lack of injury-in-fact to Plaintiffs, and discovery to-date about the revenue sharing arrangement for the Knight-Swift Plan, cast serious doubt on the merits of Plaintiffs' claims, and run afoul of the fundamental requirement that all members of a putative class must suffer an injury-in-fact for Article III standing.

Plaintiffs' failure to engage with these differences and explain to the Court how they can effectively be managed on a class-wide basis[1] undercuts their attempt to demonstrate

---

[1] Plaintiffs' counsel simply makes the blanket assertion that the claims in this case are very similar to those alleged in *Gotta v. Stantec Consulting Servs., Inc.*, 2:20-cv-01865-GMS (D. Ariz.), where he served as local counsel, and because "the Honorable G. Murray Snow…granted class certification" in that case this Court should reach the same result. (Doc. 43 at 6). This assertion fails to note that defendants in *Gotta **did not oppose class certification***, much less raise evidentiary issues similar to those present in this case. *Compare* 2:20-cv-01865-GMS, at [Doc. 59]. Moreover, comparing the motion for class certification filed in *Gotta* to this one—including specifically the misleading summary of deposition testimony to date—further confirms Plaintiffs' counsel's failure to meaningfully engage with the specific facts of this case. Improbably, this section of Plaintiffs' Motion, which is clearly intended to do nothing more than prejudice the Court on the merits as it does nothing to demonstrate the adequacy, commonality, or typicality of Plaintiffs' claims, tracks assertion for assertion the purported flaws which Plaintiffs' counsel claimed were "exposed" in the *Gotta* case and included in the motion for class certification filed there. *Compare Gotta*, at [Doc. 57 at 10-14] (summarizing "deposition testimony confirming fiduciary breaches" as including admissions of no fiduciary experience or training, that committee members abdicated fiduciary duties; that committee members lacked basic knowledge of investments, of the investments in the plan, and of compensation paid to the recordkeeper; and that there was some flaw in committee members not reviewing the complaint filed in this action), *with* (Doc. 43 at 10-14 (same)). While Defendant does not concede the accuracy of the cherry-picked deposition testimony cited in Plaintiffs' Motion, the claimed facts do not bear on the relevant issues for class certification.

the typicality and commonality necessary to maintain class claims. Thus, Plaintiffs' Motion should be denied.

**I.    BACKGROUND**

**A.    <u>Plaintiffs' Claims and the Knight-Swift Plan</u>**

Plaintiffs allege Defendant breached its fiduciary duty under ERISA in two ways: (1) by selecting and retaining ten retail share classes (nine American Funds "A" share classes and one JP Morgan Small Cap R5 share class) despite allegedly identical but cheaper institutional share classes being available (the "Challenged Share Classes"); and (2) by paying an excessive recordkeeping fee to Principal particularly when factoring in float income (the "Challenged Recordkeeping Fee"). (*See* Doc. 1). Contrary to the assertion in Plaintiffs' Motion, the Complaint focuses solely on expense of the Challenged Share Classes; there is no allegation that any funds "underperformed." (*Compare* Doc. 1 with Doc. 43 at 5).

Although Plaintiffs' Motion suggests that there was one "plan" throughout the entire Proposed Class Period, the Knight-Swift Plan did not exist until January 1, 2019. (Declaration of Rachel Monti ("Monti Decl.") ¶ 7). Indeed, Knight Transportation, Inc. ("Knight") and Swift Transportation Company, Inc. ("Swift") were two separate companies until 2017. (*See id.* ¶ 3). Unsurprisingly, during this time, the respective 401(k) plans for these separate companies were managed by separate fiduciary committees that made fiduciary decisions independently of one another, in the best interest of their separate plans.[2] (*See id.* ¶ 6). During this time, the Knight Plan did not include the Challenged Share Classes and did not use Principal as recordkeeper. (*See* Declaration of Wesley E. Stockard ("Stockard Decl.") at ¶¶ 3-4 & Exs. 1-2 (Knight Plan 2016 and 2017 Form 5500s)).

After Swift merged with Knight in 2017, the Swift Committee began separately

---

[2] Specifically, the Swift Transportation Co., Inc. 401(k) Plan ("Swift Plan") was administered by the Swift Transportation Co., Inc. Retirement/Deferred Compensation Plan Administrative Committee ("Swift Committee"). The Knight Transportation, Inc. 401(k) Plan ("Knight Plan") was administered by the Knight Retirement Plan Committee ("Knight Committee"). (*See* Monti Decl. ¶ 6).

managing the 401(k) plans of the merged entities. (*See* Monti Decl. ¶¶ 4, 6 & Ex. 1 (1/26/18 Swift Committee Minutes showing Knight Plan and Swift Plan being operated with separate terms and separate investment lineups)). During this time, minutes reflect that the Swift Committee considered each of the predecessor plans independently[3], making separate decisions about each plan's respective investments and administrative expenses as they worked to determine what the Knight-Swift Plan would ultimately look like. (*See id.*). During this time, four of the Challenged Share Classes—the EuroPacific Growth A, the Am Gov Securities A, the New Economy Fund A, and the Wash Mutual Inv Fund A— were added to the Knight Plan and it began using Principal as recordkeeper. (*See* Stockard Decl. ¶ 5 & Ex. 3 (Knight Plan 2018 Form 5500); *see also* Monti Decl. at Ex. 1 p. 2 (1/26/18 Swift Committee minutes reflecting decision to engage Principal as the recordkeeper for the Knight Plan), ¶ 5 & Ex. 2 p. 1 (5/17/18 Swift Committee minutes reflecting that Knight Plan would change its recordkeeper to Principal effective 9/1/18)).

Ultimately, effective January 1, 2019, the Knight-Swift Plan was created. (Monti Decl. ¶ 7 & Ex. 2 p. 2 (5/17/18 Swift Committee Minutes showing Committee approval for "all plans harmonizing as of January 1, 2019"), Ex. 3 p. 1 (3/29/19 Knight-Swift Transportation Retirement/Deferred Compensation Plan Administrative Committee ("Knight-Swift Committee") Minutes showing the blackout date for the new Knight-Swift Plan was lifted 1/18/19 and the new consolidated investment lineup was "[e]ffective January 1, 2019")). The Knight-Swift Plan has included the Challenged Share Classes and used Principal as recordkeeper since inception. (Stockard Decl. ¶¶ 16-20 & Exs. 14-18 (2019 through 2023 Knight-Swift Plan Form 5500s); Monti Decl. ¶ 8).

Ongoing acquisition activity since 2019 has led to several other plans being rolled

---

[3] Before the beginning of the Proposed Class Period, Knight acquired Barr-Nunn, which had its own separate 401(k) plan ("Barr-Nunn Plan"). (Monti Decl. ¶ 4). Until 2019 when the Knight-Swift Plan was formed, the Barr-Nunn Plan was managed separately from the Knight Plan by first the Knight Committee and, beginning in 2017, the Swift Committee. (*See id.* ¶¶ 4, 6). This Barr-Nunn Plan did not offer any of the Challenged Share Classes during the Proposed Class Period. (*See* Stockard Decl. ¶¶ 6-8 & Exs. 4-6 (2016 through 2018 Barr-Nunn Plan Form 5500s).

into the Knight-Swift Plan, including the Abilene Motor Express 401(k) Plan, the National Tractor Trailer School 401(k) Plan, the MME 401(k) Plan, the Eleos Techs. 401(k) Plan, the Hayes Co. 401(k) Plan, and the AAA Cooper Transportation 401(k) Plan (*See* Monti Decl. ¶ 9 & Ex. 4 (12/6/19 Knight-Swift Committee minutes discussing Abilene Motor Express 401(k) Plan integration), Ex. 5 p. 3 (4/3/20 Knight-Swift Committee minutes approving merger of National Tractor Trailer School 401(k) Plan into Knight-Swift Plan), Ex. 6 p. 1 (12/21/21 Knight-Swift Committee minutes noting merger of MME 401(k) Plan into Knight-Swift Plan), Ex. 7 p. 4 (6/4/21 Knight-Swift Committee minutes noting merger of Eleos Techs. 401(k) Plan and Hayes Co. 401(k) Plan into Knight-Swift Plan), Ex. 8 p. 2 (6/22/22 Knight-Swift Committee minutes noting merger of AAA Cooper Transportation 401(k) plan into Knight-Swift Plan and AAA Cooper and MME changing recordkeeper to Principal)). Plaintiffs have offered no evidence that any of these plans offered the Challenged Share Classes prior to integration with the Knight-Swift Plan.

### B.   Plaintiffs' Limited Investment In Challenged Share Classes and Failure to Pay Administrative Fees.

To support the Motion, Plaintiffs aver only that they were participants in the Knight-Swift Plan. (*See* Docs. 43-1, 43-2). They present no evidence they were invested in the Challenged Share Classes or that they paid the Challenged Recordkeeping Fee. (*See id.*).

However, Plaintiffs' account statements show that Plaintiff Woodard was not invested in ***any*** Challenged Share Classes at any time from October 26, 2016 through the third quarter of 2022. (Stockard Decl. ¶ 10 & Ex. 8 (Woodard's Knight-Swift Plan statements)). Plaintiff Hagins was invested in just seven of the ten Challenged Share Classes during the same period. (*Id.* ¶ 9 & Ex. 7 (Hagins' Knight-Swift Plan statements)). There is thus no evidence either named Plaintiff was ever invested in the Cap World Growth Class A, EuroPacific Growth Class A, or JP Morgan Small Cap Class R5. (*Id.* ¶¶ 9-10 & Exs. 7-8).

Plaintiffs' account statements also show that Hagins did not make ***any*** payments out of his account for fees—including recordkeeping fees. (*Id.* ¶ 9 & Ex. 7). To the contrary,

they reflect adjustments that show the revenue sharing associated with the Challenged Share Classes actually *increased* Hagins' account balances through fee adjustment credits during the Proposed Class Period. (*Id.*). In other words, Hagins received money to his account specifically because of the share class arrangement that he challenges here. (*See id.*).

C.    **The Proposed Class Seeks to Encompass Individuals Regardless of Their Challenged Share Classes or Recordkeeper.**

Plaintiffs seek to certify: "All persons who were participants in or beneficiaries of the Plan at any time between October 26, 2016 and the present." (Doc. 43 at 5).  Because Plaintiffs define the "Plan" as the Knight-Swift Transportation Holdings, Inc. Retirement Plan" (*id.*), which did not exist until January 1, 2019, by definition Plaintiffs' putative class is limited to only those who participated in or were beneficiaries under the Knight-Swift Plan.

If Plaintiffs intend to include all predecessor plans, this would include participants who (1) were not even offered, much less invested in, the Challenged Share Classes (i.e., putative class members who were only participants and/or beneficiaries in the Knight Plan prior to 2018, or who were only participants and/or beneficiaries in one of the plans later merged into the Knight-Swift Plan prior to integration with the Knight-Swift Plan), and (2) were invested in plans that did not use Principal as the recordkeeper. *See supra* at pp. 3 – 5. This is particularly salient to the questions of commonality and typicality of claims among absent class members, given the high turnover in Defendant's work force (as it true for all large motor carriers). (Monti Decl. ¶ 10 & Ex. 9 (3/5/21 Knight-Swift Committee minutes noting that the "Driver market remains the biggest headwind" to the company's business), Ex. 6 (12/21/21 Knight-Swift Committee Minutes noting company "still ha[s] labor challenges")).

D.    **Revenue Sharing in the Challenged Share Classes Creates Divergent Interests Among Named Plaintiffs and Putative Class Members**

As Plaintiffs' Motion recognizes, the American Funds A Share Classes (which make up nine of the ten Challenged Share Classes) were included in the Plan because committee

members understood there was a grandfathered revenue sharing arrangement that made these share classes more advantageous, on the whole, to plan participants than institutional share classes. (*See* Doc. 43 at 13; *see also* Brad Stewart Dep. at 126:11-128:21; Rachel Monti Dep. at 54:1-5, 58:19-59:18, 68:4-25; Cheryl Maccano Dep.[4] at 26:15-27:3, 36:7-12; Monti Decl. ¶ 11 & Ex. 10 (12/1/17 Swift Committee minutes noting of 0.23% fund manager credits to the Swift Plan, approximately 0.06% came from "American Funds grandfathered $12/participant/fund A-share arrangement" and that the Swift Plan had "done a great job capitalizing on maintaining the American Funds grandfathered A-share arrangement" which was "very effective")). Specifically, this arrangement allowed participants not only to take advantage of the standard 25 basis points of revenue sharing, but also to receive up to an additional $12 in revenue sharing credits each year.[5] (*See* Stockard Decl. ¶¶ 14-15 & Exs. 12-13 (2021 and 2022 Knight-Swift Plan Fee Summaries)).

Given this arrangement, it is apparent that participant preference for the American Funds A Share Classes over institutional share classes would vary depending on how much each individual had invested in each fund, as the institutional share class tips toward being cheaper only when an individual has enough invested in that fund for the difference in basis points charged between them to be more than $12. By way of example, in October of 2022,[6] the cost of the Challenged Share Classes as compared to the institutional share classes Plaintiffs allege were more prudent was as follows:

| Challenged Fund | Total Investment Fee | Revenue Sharing | Net Investment Fee | Total Expense Ratio[7] of Plaintiffs' | Difference |
|---|---|---|---|---|---|

---

[4] Deposition excerpts are attached as Exhibits 9 to 11 to the Declaration of Wesley E. Stockard, respectively.

[5] More specifically, this arrangement credits each participant who had $250 or more invested in an American Funds A Share investment with $1 per month in revenue sharing. As a result, participants could get up to an additional $12 per year in revenue sharing credits for **each** A Share investment. (*See* Stockard Decl. ¶¶ 14-15 & Exs. 12-13 (2021 and 2022 Knight-Swift Plan Fee Summaries)).

[6] Data in this chart comes from the Complaint and 2022 Knight-Swift Plan Fee Summary (*See* Doc. 1 ¶ 88; Stockard Decl. ¶ 15 & Ex. 13).

[7] This comparator fund has no revenue sharing.

| | | | | **Comparator** | |
|---|---|---|---|---|---|
| **Am. Balanced Fund** | 0.56% | 0.25% | 0.31% | 0.25% | .06% |
| **Am. Small Cap World** | 1.02% | 0.25% | 0.77% | 0.65% | .12% |
| **Am. Cap. World Growth** | 0.75% | 0.25% | 0.50% | 0.40% | .10% |
| **Am. EuroPacific Growth** | 0.80% | 0.25% | 0.55% | 0.46% | .09% |
| **Am. Gov. Securities** | 0.62% | 0.25% | 0.37% | 0.22% | .15% |
| **Am. Invest Co. of Am.** | 0.57% | 0.25% | 0.32% | 0.27% | .05% |
| **Am. New Economy Fund** | 0.74% | 0.25% | 0.49% | 0.41% | .08% |
| **Am. New Perspective Fund** | 0.72% | 0.25% | 0.47% | 0.41% | .06% |
| **Am. Wash Mutual Inv. Fund** | 0.56% | 0.25% | 0.31% | 0.26% | .05% |
| **JP Morg. Small Cap** | 0.80% | 0.10% | 0.70% | 0.74% | -.04% |

At this point in time, a member of the putative class would prefer the A Share Class of the Am. Balanced Fund with $12 additional revenue sharing credit, so long as .06% of their balance in the fund was less than $12 – in other words, if their balance invested in the fund was less than $20,000. As another example, at this point in time a member of the putative class would prefer the A Share Class of the Am Gov. Securities Fund, with its $12 additional revenue sharing credit, so long as .15% of their balance in that fund was less than $12 – in other words, if their balance invested in the fund was less than $8,000. Thus, putative class members with small balances are more likely to prefer the flat $12 revenue sharing credit of the grandfathered A Share Class arrangement over the corresponding percentage cost reduction of institutional share classes that Plaintiffs advance here.

Large portions of the putative class are better off under the grandfathered A Share Class arrangement. Using individual account data, Defendant's expert concluded that, in each quarter from inception of the Knight-Swift Plan through Q3 2023, ***at least 64% (and***

***in certain quarters up to 79%) of putative class members were better off with A Share Classes*** than institutional share classes. (*See* Declaration of Steve Gissiner ("Gissiner Decl.") ¶¶13 – 14 & Ex. 1). This includes the only named Plaintiff to invest in the share classes (Hagins) who benefitted substantially from those share classes as compared to the ones he claims are better. (*Id.* ¶¶15 – 16 & Ex. 2).

## II.    LAW AND ARGUMENT

### A.    Plaintiffs Must Prove that Class Certification Is Warranted

Plaintiffs seeking class certification must meet all the requirements of Rule 23(a) and one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Plaintiffs bear the burden of showing that these requirements are met because "the class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).

Particularly where there has been substantial discovery, as here, Rule 23 is "not []a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, Plaintiffs are required to demonstrate with "evidentiary proof" that the requirements of Rule 23 are met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Ninth Circuit has held that this required "evidentiary proof" must be established by a "preponderance of the evidence." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022).

Courts have consistently recognized the Rule 23 "analysis will frequently entail 'overlap with the merits of plaintiff's underlying claim,' … because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Comcast*, 569 U.S. at 33-34 (quoting *Dukes*, 564 U.S. at 351). Given the conflicts of interest here, this analysis is particularly important because "[s]erious conflicts of interests can impair adequate representation by the named plaintiffs, ***yet leave absent class members bound to the final judgment, thereby violating due process***." *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018) (emphasis added).

**B.**     **Plaintiffs Do Not Satisfy the Adequacy Requirement.**

Rule 23(a)(4) seeks to vindicate "the constitutional requirement … that 'the named plaintiff at all times adequately represent the interests of the absent class members,'" who will be bound by the outcome of the litigation. *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 848 n. 24 (1999) (quoting *Phillips Petroleum Corp. v. Shutts*, 472 U.S. 797, 812 (1985)). This adequacy requirement asks "whether … the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157, n. 13; *see also Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Plaintiffs completely fail to meet this requirement here.

Plaintiffs have not established they are adequate class representatives because they have not presented any evidence that they suffered the necessary injury in fact to support Article III constitutional standing for the claims they are pursuing. *See Paulsen v. CNF Inc.*, 559 F.3d 1061, 1072 (9th Cir. 2009) (explaining that constitutional standing requires an "injury in fact" and a "causal connection between the injury and the conduct complained of"); *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1096 (S.D. Cal. 2017) (explaining that named plaintiff cannot adequately serve as class representative without Article III constitutional standing). With regard to the Challenged Share Classes, there is no evidence that Woodard invested in ***any*** of them, and ***it does not appear that either Plaintiff invested in the*** Cap World Growth Class A, EuroPacific Growth Class A, or JP Morgan Small Cap Class R5 ***at all***. As a result, Plaintiffs have no interest in prosecuting the theory that these three specific Challenged Share Classes were more expensive than their functional equivalent institutional share classes, nor constitutional standing to pursue it. Plaintiffs are thus fundamentally inadequate to represent a class in pursing these claims. *Cf. In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d at 1096; *see also, e.g.*, *Spano v. Boeing*, 633 F.3d 574, 586-88 (7th Cir. 2011) ("[A] class representative in a defined-contribution case would ***at a minimum*** need to have invested in the same funds as the class members.") (emphasis added); *Lopez v. Embry-Riddle Aeronautical Univ., Inc.*, No. 6:22-CV-1580-PGB-LHP, 2024 WL 775213, at *3 (M.D.

Fla. Feb. 26, 2024) (denying motion for class certification where plaintiff presented no evidence she had suffered harm); *Marshall v. Northrop Grumman Corp.*, No. CV 16-06794 AB (JCX), 2017 WL 2930839, at \*7 (C.D. Cal. Jan. 30, 2017) (dismissing complaint for lack of standing where it alleged a breach of fiduciary duty based on the underperformance of a specific named fund, but did not allege that any named plaintiff was invested in that fund).

Moreover, even though Hagins invested in the other seven Challenged Share Classes, he has offered no evidence to establish that their selection over the institutional share classes caused him any injury. To the contrary, his account balance in each fund is relatively low—at no time during the Proposed Class Period did his account balance in any of the American Funds A Share Classes (other than the Am. Balanced Fund) exceed $6,000. (*See* Stockard Decl. ¶ 9 & Ex. 7). As a result, Hagins was personally better off continuing to receive the flat $12 grandfathered additional revenue sharing credit for each fund instead of the additional basis points he would have saved if he had been able to invest in institutional share classes. (*See* Gissiner Decl. ¶¶15 – 16 & Ex. 2). Given this lack of harm, Plaintiffs have not carried and cannot carry their burden to show Hagins is an adequate class representative with an injury in fact that allows him to pursue the Challenged Share Class claim on behalf of the Plan. *Cf. Spano*, 633 F.3d at 586-88; *Marshall*, 2017 WL 2930839, at \*7; *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d at 1096.

Still further, Plaintiffs have offered no evidence to establish Hagins' adequacy to represent the class with regard to the Challenged Recordkeeping Fee. As his quarterly Plan statements illustrate, he never paid any Challenged Recordkeeping Fee in the Proposed Class Period. (Stockard Decl. ¶ 9 & Ex. 7). To the contrary, he was actually ***credited*** additional funds as a fee adjustment. (*Id.*). As a result, there is no evidence of harm to Hagins from the Challenged Recordkeeping Fee and he is an inadequate representative with no standing or incentive to vigorously represent the interests of the putative class in prosecuting such a claim. *Cf. Spano*, 633 F.3d at 586-88; *Lopez*, 2024 WL 775213, at \*3;

1    *Marshall*, 2017 WL 2930839, at *7; *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F.

2    Supp. 3d at 1096.

3                **C.**    **Plaintiffs Have Failed to Establish Typicality and Commonality.**

4    Relatedly, Plaintiffs have not established their claims are common or typical of the

5    putative class. The Supreme Court has recognized "[t]he commonality and typicality

6    requirements of Rule 23(a) tend to merge…." both with each other and the adequacy of

7    representation requirement set out above. *Dukes*, 564 U.S. at 349 & n.5 (quoting *General

8    Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 157, n.13 (1982)). To establish

9    commonality, a plaintiff must show the claims of the class "depend upon a common

10   contention" that is "capable of classwide resolution," which means "determination of its

11   truth or falsity will resolve an issue that is central to the validity of each one of the claims

12   in one stroke." *Id.* at 349-350. Similarly, "[t]o establish typicality under Rule 23(a)(3), the

13   party seeking certification must show there is "enough congruence between the named

14   representative's claim and that of the unnamed members of the class to justify allowing the

15   named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. To meet these

16   requirements, Plaintiffs must show their "incentives … are aligned with those of the class."

17   *Schering Plough*, 589 F.3d at 598 (citation omitted). It is not enough that Plaintiffs' "legal

18   theory and legal claims" be typical of those of the class. *Id.* at 598. Rather, "the ***individual

19   factual circumstances*** underlying [Plaintiffs'] legal theory and legal claims" must be

20   typical as well. *Id.* (emphasis added).

21   The legal theories and claims advanced in the Complaint do not satisfy this standard

22   because the evidence shows they are rife with direct, irreconcilable conflicts among

23   putative class members as to which theories of recovery are most beneficial and should be

24   prioritized for prosecution. First, there is no one course of conduct by one governing "plan

25   committee" to evaluate during the entirety of the Proposed Class Period as the Knight-

26   Swift Plan did not exist until January 1, 2019. (Monti Decl. ¶ 7). To the extent Plaintiffs

27   seek to represent a class covering time periods before that date, there are multiple plans,

28   governed by multiple committees or, at the very least, with a committee making

12

independent decisions about each plans' lineup and recordkeeping fees. (*Id.* ¶¶ 3-6). Further, there are non-uniform investments available for various participants depending on which predecessor plan they participated in prior to 2019 and the time period during which, if any, they were part of the Knight-Swift Plan itself. (*Cf.* Stockard Decl. ¶¶ 3-8 & Exs. 1-6). Plaintiffs' choice to pursue a certified class that predates the creation of the Knight-Swift Plan and their complete failure to acknowledge these distinctions in their Motion—much less articulate a method that would permit the Court to deal with these divergent interests in the class context—both demonstrates the failure of their Motion to show class certification is appropriate by a preponderance of the evidence and casts doubt on counsel's adequacy to represent the putative class. *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1161 (9th Cir. 2013) (reversing approval of class action settlement where there is a "patent divergence of interests between the named representatives and the class," because the class representatives and class counsel did not adequately represent absent class members).

Moreover, even if the time frame for the putative class is confined to the period in which the Knight-Swift Plan actually existed, the record evidence shows that whether the theory of recovery pursued related to the Challenged Share Classes would benefit any individual putative class member is a highly individualized inquiry impacted by (1) the specific cost and revenue sharing associated with the American Funds A Share Class in which that person is invested, (2) the specific cost of the proposed substitute institutional share class, and (3) the specific amount that each putative class member has in that specific Challenged Share Class. The existence of such conflicts is not hypothetical; individual account balance data shows that on a quarterly basis at least 64% and as much as 87% of putative class members would have been better off in the Challenged Share Classes, pitting them against the minority of putative class members who would actually prefer for the claims alleged in the Complaint to be prosecuted. (Gissiner Decl. ¶¶13 – 14 & Ex. 1). Given that Supreme Court precedent requires not only the named plaintiff have injury in fact standing to act as an adequate class representative, but that each member of a class likewise

must have standing to proceed under Rule 23, the lack of injury for a majority of the putative class here critically undermines Plaintiffs' Motion. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

This lack of commonality and typicality, competing interests, and failure to demonstrate the existence of common or consistent harm among the putative class members is particularly problematic given that Plaintiffs' Motion seeks to certify a mandatory class under Rule 23(b)(1), with no notice or opt-out rights. (Doc. 43 at 18); *see also Dukes*, 564 U.S. at 345. By pursuing class wide relief under this provision, granting Plaintiffs' Motion would necessarily bind all absent class members – including the **majority** of class members who benefitted from including the American Funds A Shares as an investment option in the Plan – to Plaintiffs' counsel's theories of recovery, depriving absent class members (who have no option to opt out and then pursue their own claims) of the opportunity to develop their own evidence or prioritize the theories of imprudence in a way that would maximize recovery for themselves. *Cf. Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation."); *Taylor v. Enterprise Rent-A-Car Co.*, No. 10-1849, 2011 WL 13214090, at *4 (C.D. Cal. June 24, 2011) ("[T]he 131,495 members of the Withrow class who did not opt out of the case are bound by the Withrow settlement; their claims have been extinguished and they cannot re-litigate their claims in Plaintiffs' separate class action."); *Amalfitano v. Google, Inc.*, No. 14-cv-00673, 2015 WL 456646, at *3 (N.D. Cal. Feb. 2, 2015) ("As a class member who did not timely opt out, Plaintiff is therefore bound by the class settlement, and by res judicata. . ..."). For all of these reasons, Plaintiffs have not carried their burden to show that class certification is appropriate under Rule 23(a) and their Motion should be denied.

**D.     Plaintiffs Have Failed to Establish That the Proposed Class Should be Certified as a Mandatory Class Action Under Rule 23(b)(1).**

Plaintiffs seek certification under both Rule 23(b)(1)(A) and Rule 23(b)(1)(B), but

1    the developed record establishes they have not satisfied either prong. As noted, Rule

2    23(b)(1) classes are mandatory, without due process notice or opt-out rights. Because of

3    this, courts should narrowly apply this rule. *Dukes*, 564 U.S. at 345.

4            While it is true that, in some circumstances, ERISA breach of fiduciary actions

5    seeking equitable relief can be certified under Rule 23(b)(1)(A), the specific claims and

6    relief sought here do not satisfy the standard. A class action is maintainable under Rule

7    23(b)(1)(A) if "prosecution of separate actions ... would create a risk of inconsistent or

8    varying adjudications with respect to individual members of the class which would

9    establish ***incompatible standards of conduct*** for the party opposing the class...." *Zinser v.*

10   *Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (emphasis added) (citing Fed.

11   R. Civ. P. 23(b)(1)(A)). "The phrase 'incompatible standards of conduct' refers to the

12   situation where 'different results in separate actions would impair the opposing party's

13   ability to pursue a ***uniform continuing course of conduct.***'" *Id.* (emphasis added) (quoting

14   7A Charles Alan Wright et al., Federal Practice & Procedure § 1773 at 431 (2d ed 1986)).

15   "Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for

16   damages." *Id.* (citing *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir.

17   1976); *McDonnell Douglas Corp. v. U.S. Dist. Court*, 523 F.2d 1083, 1086 (9th Cir.1975))

18   (finding that a request to "establish a medical monitoring fund" while couched as a request

19   for relief in the form of a course of conduct that could be certifiable under Rule 23(a)(1)(B)

20   was "in essence" a request for monetary relief and refusing to apply the provision).

21           Plaintiffs' requests do nothing more than ask the Court to order Defendant to comply

22   with existing legal obligations under ERISA. (*Compare, e.g.*, Doc. 1 at 30-31 (seeking, for

23   example to "enjoin . . . future ERISA violations" and "reform the Plan" to "obtain bids for

24   recordkeeping expenses and to pay only reasonable recordkeeping expenses")). There is no

25   credible risk that any other case brought by any putative class member could result in an

26   "inconsistent adjudication" that affirmatively required Defendant to violate ERISA, never

27

28

obtain bids for recordkeeping expenses, or pay unreasonable recordkeeping fees.[8] At most, the risk is that a putative class member may succeed on an individual claim seeking to force Defendant to generally engage in conduct consistent with ERISA's requirements and some may not, which circumstance does not justify certifying a class under Rule 23(b)(1)(A). *See, e.g.*, *In re Bendectin Prods. Liability Litig.*, 749 F.2d 300, 305 (6th Cir. 1984) ("The fact that some plaintiffs may be successful in their suits against a defendant while others may not, is clearly not a ground for invoking Rule 23(b)(1)(A)."); *compare also, e.g.*, *Casa Orlando Apts., Ltd. v. Fed. Nat. Mortgage Ass'n*, 624 F,3d 185, 197-198 (5th Cir. 2010) ("An incompatible judgment would arise if one court *required* Fannie Mae to continue its relationship with GMACCM while another court *prevented* Fannie Mae from working with GMACCM. Such a scenario is implausible given the facts of this case.").

Plaintiffs' argument under Rule 23(b)(1)(B) is likewise flawed. Rule 23(b)(1)(B) applies only when there is a risk that "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Certification under this rule is only appropriate where an individual lawsuit will "inescapably [] alter the substance of the rights of others having similar claims." *Zinser*, 253 F.3d at 1196-97. Accordingly, it has typically been applied in the trust context where relief is being sought from a limited fund to which multiple beneficiaries lay claim, *compare Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834-35 (1999), and it is not intended to permit certification based on the mere fact that a decision in one case might serve as legal precedent in another. *Zinser*, 253 F.3d at 593; *see also In re Conagra Foods, Inc.*, 90 F. Supp.3d 919, 990 fn. 207 (C.D. Cal. 2015) (denying class where individualized decisions did not support class certification); *Huegel v. City of Easton*, 2002 WL 32348320, at *5 (E.D. Pa. Oct. 23, 2022) ("[T]he individualized nature

---

[8] The Ninth Circuit has likewise rejected any assertion that the risk separate courts may order slightly different administrative schemes are potential "inconsistent" courses of conduct which are implicated by Rule 23(a)(1)(B). *Compare Zinser*, 253 F.3d at 1194-85 (citing *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973)).

of the claims are not dispositive of subsequent cases, and, as a result, class certification under Rule 23(b)(1)(B) is inappropriate.").

Here, there is no "limited fund" necessitating certification under Rule 23(b)(1)(B). Nor would denying Plaintiffs' Motion and having plan participants and beneficiaries pursue their own individual claims otherwise implicate the circumstances for which Rule 23(b)(1)(B) was intended. Without class certification, a finding by one court that certain actions of Defendant did or did not breach ERISA's fiduciary duty of prudence during the Proposed Class Period would be nothing but legal precedent in a subsequent action brought against Defendant by a different individual plaintiff. As discussed in *Zisner*, this risk is simply not enough to certify a mandatory class under Rule 23(b)(1)(B).

Indeed, the inability to opt out of a Rule 23(b)(1) certification in the circumstances present here where the interests of class members are so divergent effectively flips the concerns of this Rule on its head, such that ***invoking it*** to certify a class is actually what would prejudice the putative class members' interests by depriving them—without due process—of the ability to make the arguments that would maximize the remedy available to them. It is thus certification of the putative class as proposed by Plaintiffs—and not denial of their Motion—that would establish a situation where this lawsuit "inescapably" harms the substance of the rights of absent class members. For this additional reason, Plaintiffs' Motion should be denied. *Compare Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 339 (4th Cir. 1998) (discussing fundamental error in certifying a class with a conflict in remedial interests and noting "Pursuing a damage remedy that was at best irrelevant and at worst antithetical to the long-term interests of a significant segment of the putative class added insult to the injury of abandoning the only remedy in which that segment … was interested. Plaintiffs' strategy thus illustrates the error of allowing them to sue on behalf of 'all' Meineke franchisees").

## III.   CONCLUSION

For the reasons stated herein, this Court should deny Plaintiffs' Motion.

1    DATED: December 30, 2024

2
                                                         s/ Wesley E. Stockard
3                                                        Mark Ogden, Esq.
                                                         Melissa L. Shingles, Esq.
4                                                        LITTLER MENDELSON, P.C.
                                                         2425 E. Camelback Road, Suite 900
5                                                        Phoenix, Arizona 85016
                                                         mogden@littler.com
6                                                        mshingles@littler.com

7                                                        Wesley E. Stockard, *Pro Hac Vice*
                                                         Rachel Kaercher, *Pro Hac Vice*
8                                                        James S. Fielding, *Pro Hac Vice*
                                                         LITTLER MENDELSON P.C.
9                                                        3424 Peachtree Road, NE, Suite 1200
                                                         Atlanta, GA 30326-4803
10                                                       wstockard@littler.com
                                                         rkaecher@littler.com
11                                                       jfielding@littler.com

12                                                       Bradley Crowell, *Pro Hac Vice*
                                                         LITTLER MENDELSON P.C.
13                                                       1900 Sixteenth Street, Suite 800
                                                         Denver, CO 80202-5835
14                                                       bcrowell@littler.com

15                                                       *Counsel for Defendant*

16   I hereby certify that I electronically
     transmitted the attached document to
17   the Clerk's Office using the CM/ECF
     System for filing and transmittal of a
18   Notice of Electronic Filing to the
     following CM/ECF registrants, this
19   30th day of December, 2024.

20   Michael C. McKay
     MCKAY LAW, LLC
21   5635 North Scottsdale Rd., Suite 170
     Scottsdale, Arizona 85250
22   mckay@mckay.law

23   Marc R. Edelman, Pro Hac Vice
     MORGAN & MORGAN, P.A.
24   201 N. Franklin Street, Suite 700
     Tampa, Florida 33602
25   MEdelman@forthepeople.com

26

27

28

18

1    Brandon J. Hill, Pro Hac Vice
     Luis A. Cabassa, Pro Hac Vice
2    Amanda Heystek, Pro Hac Vice
     WENZEL FENTON CABASSA,
3    P.A.
     1110 N. Florida Avenue, Suite 300
4    Tampa, Florida 33602
     bhill@wfclaw.com
5    lcabassa@wfclaw.com
     aheystek@wfclaw.com
6
     *Attorneys for Plaintiffs and the*
7    *Proposed Class*

8
     *s/ Suzy Walker*
9    Suzy Walker

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28