Michael McKay (023354)
**MCKAY LAW, LLC**
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Facsimile: (480) 348-3999
Email: mmckay@mckaylaw.us

[Additional counsel identified
in the signature block below]

*Attorneys for Plaintiffs and
the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Hagins and Tommie Woodward, individually and on behalf of the Knight-Swift Transportation Retirement Plan,<br><br>    Plaintiffs,<br><br>        vs.<br><br>Knight-Swift Transportation Holdings, Inc.,<br><br>    Defendant. | Case No.: 2:22-1835-PHX-ROS<br><br>**Plaintiffs' Reply in Support of Motion for Class Certification** |

Plaintiffs respectfully submit this Reply in support of their Motion for Class Certification ("Motion") (Dkt. No. 43.)

## I. INTRODUCTION

Plaintiffs have established all grounds for class certification in their Motion. In its Response (Dkt. No. 51) to the Motion, Defendant ignores Plaintiffs' arguments, ignores relevant facts, and ignores controlling law. Instead, Defendant parades arguments that range from frivolous to brazenly dishonest.

Defendant's Response is largely cut-and-pasted from a from another brief in opposition to a motion for class certification in a similar ERISA breach of fiduciary duty case against Prime Healthcare. Defendant's counsel here also represented Prime Healthcare in the similar ERISA case. Defendant regurgitates the same arguments made by the same counsel in Prime Healthcare. Moreover, large swaths of the Prime Healthcare brief in opposition to class certification were cut-and-pasted into Defendant's brief in this case. The Prime Healthcare brief in opposition to class certification is attached as Exhibit 1 to the Declaration of Michael McKay. ("McKay Decl."). By way of example, the text of pages 8-9 of the Prime Healthcare brief have been cut-and-pasted into page 9 of the Defendant's brief here. This example is illustrative not exhaustive.

Recognizing Defendant's cut-and-paste job is especially important because the Honorable Josephine L. Stanton in the Central District of California rejected the arguments Defendant made in opposition to class certification in Prime Healthcare. Judge Stanton granted class certification on December 28, 2023. A copy of Judge Stanton's Order granting class certification is attached as Exhibit 2 to the Declaration of Michael McKay. It would be one thing, and even understandable, to copy a brief that resulted in a desired outcome. But here, Defendant has the audacity to copy from a brief and make the identical arguments to this Court that were just recently rejected by Judge Stanton (and many other courts). And, of course, Defendant nowhere in its Response even references the Prime Healthcare class

certification Order nor identifies for the Court here that Judge Stanton just rejected the same arguments it asks the Court to embrace here. The skullduggery is unfortunate.

      Defendant also takes some ill-advised shots by attempting to distinguish this case from *Gotta v. Stantec Consulting Services, Inc.* 2:20-cv-01865-GMS (D. Arizona) – a case that was cited by Plaintiffs in their Motion as supporting class certification. The Honorable G. Murray Snow granted class certification in *Gotta* on May 2, 2023. Judge Snow's Order is attached as Exhibit 3 to the Declaration of Michael McKay. Plaintiffs' lead counsel in this case, Michael McKay, was also lead counsel for the named plaintiffs in *Gotta. See* Declaration of Michael McKay, ¶ 2. Michael McKay drafted all of the pleadings in *Gotta. Id.* He argued at all of the hearings in *Gotta*. *Id.* He took and/or defended nearly all of the depositions in *Gotta.* And Michael McKay was appointed class counsel by Judge Snow in *Gotta. Id.* Defendant nevertheless tells the Court that Michael McKay was merely "local counsel" in *Gotta.* Response at 2, fn 1.This is a false statement. Defendant made the false statement in a wrongful attempt to mislead the Court into believing that Michael McKay is unfamiliar with *Gotta,* how it was successfully litigated, why class certification was granted, and why it ultimately settled on a court-approved class-wide basis for $2 million. *Id.* Unfortunately, Defendant's misrepresentations here are typical of misrepresentations elsewhere in its Response. To its credit however, Defendant accurately represents that the defendant in *Gotta* did not oppose class certification. That is because class certification was so clearly warranted in *Gotta* – as it is here too – and so the defendant in *Gotta* elected not to waste party and court resources with frivolous arguments and egregious misrepresentations in an opposition to the motion for class certification in that case – unlike Defendant here. Regardless, the class certification issues in *Gotta* were fully briefed and Judge Snow issued a thorough and eloquent order analyzing Rule 23's factors, concluding all were satisfied. The same analysis applies here. *Gotta* strongly supports Plaintiffs' Motion.

## II. ARGUMENT

### A. Rule 23(a) is Satisfied

#### 1. Numerosity

The 2023 Form 5500 disclosure for the Plan was submitted by Defendant to the United States Department of Labor and was signed under penalty of perjury by Defendant. It shows that at the end of 2023 there were 23,547 active participants in the Plan with account balances. *See* 2023 Form 5500 at 2, Dkt. No. 43-14. These are putative class members. And yet, Defendant does not concede Rule 23's numerosity requirement is satisfied. The Court here gets another example of Defendant's unreasonableness. The Court ought to find numerosity is satisfied.

#### 2. Typicality and Commonality

Defendant does not address the common questions that Plaintiffs identify in their Motion, including whether Defendant's process to monitor the Plan's investments and fees comported with applicable standards, whether the Plan paid excessive compensation to the Plan's recordkeeper, or whether the Plan suffered losses as a result of Defendant's fiduciary failures. *See* Motion at 12-13. Defendant entirely ignores the Declaration of Ty Minnich Submitted in Support of Plaintiff's Motion for Class Certification (Dkt. No. 43-3) wherein Minnich opines the materials he has reviewed "**demonstrate massive failures by the Plan fiduciaries [Defendant]. These failures affected the Plan as a whole. Any recovery in this lawsuit will be had by the Plan as a whole**." (*Id.* ¶ 8.) (Emphasis added.) Instead, Defendant makes the same shopworn arguments rejected by Judge Stanton in *Prime Healthcare* and by a myriad of other sister federal courts across the country.

For example, Defendant argues that typicality and commonality are not present because ostensible evidence shows that any recovery by putative class members would involve "a highly individualized inquiry." Response at 13. This argument is materially identical to an argument rejected in *Kanawi v. Bechtel Corp*., 254 F.R.D. 102 (N.D. Cal. 2008):

> Defendants urge that the Court deny class certification because individualized damage inquiries will dwarf the liability inquiry. Specifically, Bechtel asserts that "excessive fee" and "non-disclosure" claims are necessarily individualized and incapable of class-wide proof. Defendants further argue that any calculation of damages will require a comparison of individual accounts and the hypothetical value of the Plan
>
> * * *
>
> [T]he common focus is on the conduct of Defendants: whether they breached their fiduciary duties to the Plan as a whole by paying excessive fees, whether they made imprudent investment decisions, and whether they concealed information from all Plan participants. Plaintiffs' claims do not focus on injuries caused to each individual account, but rather on how the Defendants' conduct affected the pool of assets that make up the [plan].

*Id.* at 108–110. The *Kanawi* Court rejected the arguments Defendant makes here and granted class certification in that case. This Court should do the same.

Defendant also argues that typicality and commonality are not present because the Plan did not exist until January 1, 2019, shortly after Knight Transportation merged with Swift Transportation. Response at 12. Defendant's argument that a merger of two companies and the merger of those companies' respective retirement plans extinguishes ERISA breach of fiduciary duty claims is specious. Defendant provides zero authority in support of its argument. That is because none exists.

Mergers and acquisitions are common for billion dollar publicly traded companies like Defendant. When they happen, retirement plans are amended or terminated. But mergers do not create "new" plans. That is nonsense. Moreover, Defendant's argument contradicts what it has been telling the federal government for years. Indeed, each of the Plan's Form 5500 disclosures from 2016 to 2022 state the Plan was "established January 1, 1992" and that the "Plan has been amended and restated throughout the years…." *See e.g.,* 2016 5500 at 28, Dkt. No. 43-7 and 2022 5500 at 39, Dkt. No. 43-14.[1] So, while Defendant

---

[1] To the extent Defendant's argument that class certification ought to be denied because the name of the Plan was amended in 2019 from "Swift Transportation Company Retirement Plan" to "Knight-Swift Transportation Holdings, Inc. Retirement Plan" – the argument is

4

asks this Court to find that a "new" Plan was created on January 1, 2019, for years after the so-called "new" plan was established, Defendant has been telling the federal government and the rest of the world for that matter, under penalty of perjury no less, that the Plan was "established January 1, 1992." Defendant's dishonesty with this Court is on full display.

Additionally, Defendant's argument that a "new" plan was created because of a merger in 2019 also ignores that Defendant merged with Abliene Motors in 2020 (2020 5500 at 43, Dkt. No. 43-11); National Tractor Trailer School in 2021 (2021 5500 at 44, Dkt. No. 43-12); and Hayes Company, LLC in 2022 (2022 5500 at 46 Dkt. No. 43-13). In connection with each of these mergers, the Plan was amended to include the participants and retirement savings associated with retirement plans of the acquired companies. That is how the process always works. It is unclear why Defendant argues a new Plan was created in 2019 because of a merger, but not in 2020, 2021, or 2022 when mergers also occurred. If mergers created "new" plans then ERISA's fiduciary requirements would be rendered virtually meaningless and would be extinguished each time a merger or acquisition occurred. Plaintiffs are not aware of any court in the country having adopted such an irrational rule. Defendant provides no authority for its argument in this regard either.

Defendant also seems to ignore that any recovery in this case will go to the Plan itself – as is required by ERISA. If a recovery is obtained here, the Plan will propose to the Court a "Plan of Allocation" of settlement proceeds. The Plan of Allocation will take into account mergers and acquisitions so that all Plan participants are treated equitably in connection with any settlement proceeds relative to their respective investments in the Plan. This is how ERISA settlements virtually always work. This is no obstacle to class certification.

---

likewise specious. Amending the name of a retirement plan does not operate to create a "new" plan. In any event, the class definition can be amended if the Court so desires to include the Swift Transportation Company Retirement Plan, which would moot Defendant's semantic-based objection.

Defendant also makes more misrepresentations to the Court when it states there was "no one course of conduct" from 2016 to the present. Response at 12. The Plan's Form 5500 disclosures from 2016 to the present show that Principal Life Insurance Company (or one of its affiliates) has served as the Plan's recordkeeper since 2016 to the present and that Principal received excessive compensation from the Plan since 2016. Additionally, the Plan's Form 5500 disclosures show that from 2016 to the present Defendant caused the Plan to include the same imprudent investments on the Plan's investment menu – including the American Funds Class A shares. *Id., see also* Complaint, ¶ 88. Defendant's imprudence relating to the excessive recordkeeping compensation paid to Principal and imprudent investments are **identical** throughout the entire class period. For Defendant to argue otherwise is disingenuous and misleading.

### 3. Adequacy

Defendant argues Plaintiffs do not satisfy the adequacy requirement because they lack Article III standing for the claims they are pursuing. Response at 10. Once again, Defendant cites no authority that supports its argument. Instead, Defendant cites to *Marshall v. Northrop Gruman Corp.,* No. CV 16-06794 (AB (JCX) 2017 WL 2930839 *7 (C.D. Cal. Jan. 30, 2017). But *Marshall* is not applicable. In *Marshall*, as Defendant concedes, a complaint was dismissed for lack of Article III standing when the plaintiff in that case alleged imprudent fund selection caused him and the retirement plan losses, but the plaintiff did not invest in **any** of the allegedly imprudent investments. Thus, the *Marshall* holding makes sense. In stark contrast to *Marshall*, in this case it is undisputed that plaintiff Hagins invested in no less than seven of the alleged imprudent investments at issue.[2] Response at

---

[2] Defendant's Response defines the imprudent investments at issue as "Challenged Share Classes." This is not a term that is used in the retirement plan industry. It is a misnomer. Plan participants do not invest in share classes. They invest in mutual funds, which are offered by investment companies in share classes that differ only in costs. It is misleading and inaccurate to refer to the imprudent investments at issue as "Challenged Share Classes." Plaintiffs decline to do so in this Reply.

11. So, unlike in *Marshall*, Hagins' retirement savings were invested in the imprudent investments at issue in this lawsuit and suffered losses as a result. It is also beyond dispute that both Plaintiffs challenge the overall prudent administration of the Pla, and allege they pay excessive recordkeeping fees that causes losses to their individual accounts. Complaint ¶¶ 22-25. And Defendant's do not even contest the fact that Plaintiff's pay the alleged excessive recordkeeping fees. Thus, it ought to be beyond dispute that Plaintiffs have Article III standing.

Defendant goes a step further and argues that Plaintiffs need to have invested in every alleged imprudent investment on the Plan's investment menu to have Article III standing. This argument was recently rejected in *In re Sutter Health ERISA Litig.*, 1:20-cv-01007-JLT (E.D. Cal. Feb. 9, 2023). Like Defendant here, the defendant in *In re Sutter Health.*, argued that plaintiffs lacked standing to bring claims relating to imprudent investments in which the plaintiffs did not invest. The court rejected the argument, citing an array of on-point holdings from across the country doing the same, and explained that because plaintiffs challenged the defendants' prudent administration of the plan, invested in at least one of the imprudent funds, and alleged they paid excessive compensation to the plan's recordkeeper (like Plaintiffs do here) that was sufficient to establish Article III standing to bring a claim for breach of ERISA's duty of prudence and that plaintiffs did not need to allege they invested in every imprudent fund to establish Article III standing. *Id.* at *11. The common sense and well-reasoned holding from *In re Sutter Health ERISA Litig.* should guide the Court's analysis here.

Many other courts have drawn the same conclusion. It is well-established that for the purpose of standing, a plaintiff need not have invested in every imprudent fund on a plan's investment menu (that makes no sense and would lead to absurd results) but must merely plead an injury implicating defendant's liability under ERISA. *See* Braden, 588 F.3d at 593 (holding participants can assert claims on behalf of "the entire Plan" to "seek relief ... that sweeps beyond [their] own injury"); *see also Johnson*, 250 F. Supp. 3d at 465 (rejecting

7

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

defendants' "challenge [] to plaintiffs' standing on investment options [in] which they did not invest"); *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017) (rejecting argument that "Plaintiffs lack standing to represent the class with respect to funds in which they did not invest"); *Krueger v. Ameriprise Fin. Inc.*, 304 F.R.D. 559, 566-67 (D. Minn. 2014) (rejecting argument that "Plaintiffs lack standing to pursue claims based on funds in which they did not invest"); *Walsh v. Marsh & McLennan Cos.*, 2006 WL 734899, at *1 (D. Md. Feb. 27, 2006) ("[I]t does not matter, at least for the purpose of constitutional standing, that [the plaintiff] [has] not invested in [certain] funds.").

In sum, courts have long recognized that when a plaintiff who is injured in his or her own plan, such as Plaintiffs here, have standing and may proceed under 29 U.S.C § 1132(a)(2) on behalf of a plan even if the relief sought sweeps beyond his or her own injury. Once an individual has alleged a distinct and palpable individualized injury, as Plaintiffs have done here, that plaintiff has standing to challenge fiduciary imprudence if resulting injuries are of a sort shared by a large class of possible litigants. *Cassell v. Vanderbilt Univ.*, No. 3:16-CV-2086, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018).

Defendant next argues that Plaintiffs are not adequate class representatives because they suffered no losses of any kind to their individual Plan accounts. Response at 6-12. Defendant is absolutely wrong. The only ostensible evidence Defendant offers in support of its argument about Plaintiffs suffering no losses are opinions by Defendant's expert witness Mr. Steven K. Gissiner. Mr. Gissiner has made no formal disclosures in this case. He has provided no reports yet and he has not been deposed. This is important because Mr. Gissiner has a long history of offering opinions on behalf of defendants in similar ERISA cases wherein he opines, just like he does here, that the named plaintiffs suffered no losses and then his own clients settle said cases for millions of dollars – thus illustrating that not even his clients apparently believe his opinions. Declaration of Michael McKay, ¶ 3.

Additionally, Mr. Gissiner provided *similar* opinions in the *Stantec* and *Prime Healthcare* cases discussed above – both of which were certified as class actions.

Most importantly, Mr. Gissiner's opinions ought to be treated as evidence that supports granting Plaintiff's Motion because, as explained in the Rebuttal Declaration of Plaintiffs' expert witness, Ty Minnich filed herewith, Mr. Gissiner's opinions are based on clear misrepresentations of fact, as corroborated by important case documents. When the facts ostensibly supporting Mr. Gissiner's opinions are corrected it is clear that Plaintiffs and the Plan suffered millions in losses caused by Defendant's egregious fiduciary failures. *See* Rebuttal Declaration of Ty Minnich, ¶¶ 3-21.

### B.  Rule 23(b) is Satisfied

Defendant's Rule 23(b)(1) arguments fly in the face of bedrock authority regarding certification in ERISA actions. *See Urakhchin*, 2017 WL 2655678, at *7 ("Most ERISA class action cases are certified under Rule 23(b)(1)."). Defendant made the same arguments in the *Prime Healthcare Inc.* case. Defendant cut-pasted large swaths of the *Prime Healthcare* brief making the same arguments here that were rejected by Judge Stanton.

The key to understanding why this action ought to be certified pursuant to Rule 23(b)(1) and/or (b)(2) as a non-opt out class action begins with a careful scrutiny of the nature of the claim Plaintiffs have brought against Defendant. Plaintiffs allege that throughout the class period, Defendant selected a slate of investment options for the Plan that were imprudent due to their high fees, when lower-cost share classes of identical funds – differing only in cost – were available to the Plan. Plaintiffs further allege the Plan suffered losses due to unreasonably high recordkeeping fees. Plaintiffs seek to recover the **Plan's** losses. Plaintiffs do not allege any **individualized losses**, nor do Plaintiffs seek recovery of any **individualized losses**. ERISA §409, 29 U.S.C. §1009 provides, in relevant part,

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such **plan** any losses to the

9

**plan** resulting from each such breach …

Plaintiffs seek no recovery of any individualized losses because ERISA does not provide the ability for individuals to recover individual remedies for breach of ERISA's fiduciary duties (with limited exceptions not applicable here).

Opt-out classes are not appropriate in this context because a class member who chooses to opt out of a class or a settlement would be opting out the Plan. The class member could then re-file the same lawsuit on behalf of the same plan. Opt-outs would thus result in one of two absurd outcomes: (1) opt-outs would expose a defendant to potentially endless lawsuits seeking duplicate recoveries on behalf of the same plan destroying any meaningful benefit to a defendant who chooses to settle any lawsuit brought on behalf of a plan; or (2) subsequent lawsuits filed by opt-out class members on behalf of the plan would be dismissed with prejudice based on claim preclusion, causing all parties and the Court to spend resources resolving claims that had no merit at the outset. This is precisely why courts in the Ninth Circuit and elsewhere certify ERISA breach of fiduciary duty claims brought on behalf of a plan as mandatory, non-opt out class actions under Rule 23(b)(1) and/or (b)(2). *See Gotta v. Stantec* class certification order, Exhibit 3 to Michael McKay Declaration; *Wanek v. Russell Inv. Tr. Co.*, 2:21-cv-00961-CDS-BNW (D. Nev. Aug. 29, 2024) (certifying ERISA class under Rule 23(b)(1), collecting cases from within the Ninth Circuit); *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 965 (9th Cir. 2016) (affirming district court's order certifying ERISA class under Rule 23(b)(1)(A) and (b)(1)(B) and rejecting the argument that certification under Rule 23(b)(3) was required).

First, Defendant fails to provide any legal authority – not a single case – that provides ERISA breach of fiduciary duty claims ought not be certified under Rule 23(b). Instead, Defendant provides a handful of off-point cases dealing with torts and cases where putative class members had individual claims and were seeking individualized damages. These cases are not helpful.

Second, Defendant contends there might be no risk of incompatible standards or conduct. Response, at 15. But this is more nonsense. If Plaintiffs obtain orders from this

10
REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Court with respect to Defendant's satisfaction of its ERISA's fiduciary duties, requiring removal imprudent Plan options, requiring Defendant to take remedial steps with respect to the Plan's recordkeeper compensation, or to restore Plan losses from other alleged imprudence then obviously if these remedies were pursued later by different participants in the same Plan, the result risks incompatible standards that would be impossible to avoid. *See Urakhchin*, 2017 WL 2655678, at *7 ("Because Defendants cannot manage the Plan in an individualized fashion for each Plan participant, whatever injunctive relief an individual plaintiff obtains would be applied to the Plan as a whole.").

Third, Defendant contends there is no risk that adjudications with respect to some participants' claims would be dispositive of the interests of other Plan participants. Response at 16. This ignores the derivative nature of ERISA § 502(a)(2) claims. Indeed, again, "[i]f this claim were brought by an individual Plan participant, any judgment on Defendant's liability would necessarily affect the determination of any claim for monetary relief for this same conduct brought by other Plan participants in any concurrent or future actions." *Urakhchin*, 2017 WL 2655678, at *8.

Fourth, Defendant argues certification under Rule 23(b)(1) is not appropriate because there is "no limited fund" and Plan participants ought to be able to "pursue their own individual claims." Response at 17. Again, Defendant misstates the law and mischaracterizes the nature of the claims at issue. Plaintiffs have not brought any individual claims nor are they seeking any individual remedies. They are seeking only Plan-wide remedies. As such the "limited fund theory of Rule 23(b)(1) does not apply." *See In re Syncor Erisa Litig.,* 227 F.R.D. 338 (C.D. Cal. 2005) (granting class certification under Rule 23(b)(1) and rejecting the identical argument Defendant makes here amount the "limited fund" theory).

Certification under both subparts of Rule 23(b)(1) is appropriate.

### III. CONCLUSION

Plaintiffs respectfully request the Court to grant the Motion.

| | |
|---|---|
| Dated: January 29, 2025 | /s/ *Michael C. McKay* |
| | Michael C. McKay (023354) |
| | **MCKAY LAW, LLC** |
| | 5635 N. Scottsdale Road, Suite 117 |
| | Scottsdale, Arizona 85250 |
| | Telephone: (480) 681-7000 |
| | Facsimile: (480) 348-3999 |
| | Email: mmckay@mckaylaw.us |
| | |
| | Marc R. Edelman, Esq. (Pro Hac Vice) |
| | **MORGAN & MORGAN, P.A.** |
| | 201 N. Franklin Street, Suite 700 |
| | Tampa, Florida 33602 |
| | Telephone: (813) 223-5505 |
| | Email: MEdelman@forthepeople.com |
| | |
| | Brandon J. Hill, Esq. (Pro Hac Vice) |
| | Luis A. Cabassa, Esq. (Pro Hac Vice) |
| | **WENZEL FENTON CABASSA, P.A.** |
| | 1110 N. Florida Avenue, Suite 300 |
| | Tampa, Florida 33602 |
| | Telephone: (813) 224-0431 |
| | Email: bhill@wfclaw.com |
| | Email: lcabassa@wfclaw.com |
| | *Attorneys for Plaintiffs and the proposed Class* |

## **CERTIFICATE OF SERVICE**

I certify that on this 29th day of January, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registered users.


/s/ *Michael C. McKay*