1    **WO**

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                            FOR THE DISTRICT OF ARIZONA

8

9    Robert Hagins, et al.,                    No. CV-22-01835-PHX-ROS

10                    Plaintiffs,              **ORDER**

11   v.

12   Knight-Swift    Transportation    Holdings
     Incorporated,

13
                     Defendant.
14

15          Plaintiffs seek certification of a class covering individuals who were participants in

16   or beneficiaries of the Knight-Swift Transportation Holdings, Inc. Retirement Plan (the

17   "Plan") between October 26, 2016 and the present.  (Doc. 43, "Mot.").  Defendant

18   responded (Doc. 51, "Resp."), and Plaintiffs replied (Doc. 56, "Reply").  For the reasons

19   below, the Court will grant Plaintiffs' motion.

20   **I.      Background**

21          The Knight-Swift Transportation Holdings Inc. Retirement Plan (the "Plan"),

22   formerly known as the Swift Transportation Company Retirement Plan,[1] was established

23   on January 1, 1992 as a qualified retirement plan commonly referred to as a 401(k) plan.

24   (Doc. 43-10 at 33; Doc. 1, "Compl." ¶¶ 13–14).  Plaintiffs are participants of the Plan.

25   (Compl. ¶¶ 7, 19).  Defendant is the Plan's sponsor, administrator, and fiduciary.  (*Id.* ¶¶

26   26–27, 37–38).  Since at least 2016, Principal Life Insurance Company ("Principal Life")

27   has served as the Plan's recordkeeper and is responsible for managing the Plan's

28   ─────────────────────────────
     [1] The Plan's name was amended in 2019 following the merger between Knight
     Transportation, Inc. and Swift Transportation Company, Inc.

investments.  (*Id.* ¶ 18).

Plaintiffs assert Defendant breached its fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§1001–1461 ("ERISA") by (1) causing the Plan to select and retain underperforming and excessively expensive investment options rather than prudent investments for the Plan's investment menu and (2) failing to monitor and control excessive compensation paid by Plan participants to Principal.  (*See* Compl.; Mot. at 1).  Specifically, Plaintiffs allege Defendant invested over $200 million in ten retail share classes (nine American Funds "A" share classes and one JP Morgan Small Cap R5 share class) despite the availability of identical lower-cost retirement class shares.  (Compl. ¶¶ 88–89; Mot. at 3–4).  Plaintiffs allege Defendant caused Principal Life to receive excessive compensation in the form of both (1) "direct" compensation—to which the Plan paid Principal Life $83.81 per participant in 2021, whereas the typical rate in similar plans is $25–30 per participant and (2) "indirect" compensation in unascertainable, exorbitant amounts via both revenue sharing and float on money deposited and/or withdrawn from the Plan.[2]  (*Id.* ¶¶ 68–73).  Accordingly, Ty Minnich, Plaintiffs' expert witness, estimates the losses sustained by the Plan because of "fiduciary failures" to be more than $1 million. (Doc. 43-3 at 3).  Plaintiffs consequently seek certification of the following class: All persons who were participants in or beneficiaries of the Plan, at any time between October 26, 2016 and the present.

## II.     Legal Standard

Fed. R. Civ. P. 23 "provides a procedural mechanism for 'a federal court to adjudicate claims of multiple parties at once, instead of in separate suits.'"  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393,

---

[2] Plaintiffs describe revenue sharing and float compensation as follows.  Principal Life receives indirect revenue sharing compensation from investment companies who have their investment products on the Plan's menu of investments.  Principal Life also receives compensation from the Plan on all Plan participant money transferred into or out of the Plan while Plan participant money sits in Principal Life's clearinghouse account. That is, Principal Life takes this money, invests it, and keeps the investment earnings for itself as another form of indirect compensation; known as "float compensation."

408 (2010)).  "Under Rule 23, a class action may be maintained if the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b)."  *Van v. LLR, Inc.*, 61 F.4th 1053, 1062 (9th Cir. 2023).  Those four requirements under Rule 23(a) are "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation."  *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).  If Plaintiffs satisfy those requirements, they must then meet the requirements for one of the types of classes under Rule 23(b).  *Olean*, 31 F.4th at 663.

### III.    Analysis

Because Plaintiffs have satisfied the requirements of Fed. R. Civ. P. 23(a) and (b), class certification is warranted.

#### A.  Rule 23(a)

##### i.   Numerosity

A class may be certified only if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, Plaintiffs assert "[a]s of December 31, 2023, there are 23,547 Plan participants with active account balances."  (Mot. at 11; Doc. 32-14 at 3).  Defendant does not contest the number of active Plan participants.  Because joinder of all Plan participants with active account balances would be impracticable, the Court finds the proposed class satisfies the numerosity requirement.

##### ii.   Commonality and Typicality

Commonality concerns "the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  To achieve commonality, a plaintiff must "demonstrate that they and the proposed class members have suffered the same injury and have claims that depend on a common contention capable of class-wide resolution."  *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019).  Accordingly, "what matters to class certification … is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Dukes*, 564 U.S. at 350.  Because ERISA fiduciary breach claims are

- 3 -

actions on behalf of a plan regarding duties owed at the plan level, commonality "is quite likely to be satisfied." *In re Schering*, 589 F.3d at 599 n.11; *see also* 29 U.S.C. §1104(a)(1) ("a fiduciary shall discharge his duties with respect to a plan").

Relatedly, "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (citation omitted). While distinct requirements, Rule 23(a)'s commonality and typicality requirements "tend to merge." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (quoting *Dukes*, 564 U.S. at 349 n.5). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982).

Defendant argues Plaintiffs have not satisfied commonality and typicality for the following reasons: (1) Plaintiffs fail to show a single course of conduct from 2016 to the present and (2) the evidence shows that any recovery by putative class members would involve a "highly individualized inquiry." These arguments are unavailing.

Defendant asserts the Plan did not exist until 2019 after the Knight-Swift merger, and thus there is no one course of conduct by one governing "plan committee." (Resp. at 12). According to Defendant, there were multiple plans "governed by multiple committees or, at the very least, with a committee making independent decisions about each plans' lineup and recordkeeping fees" prior to the Knight-Swift merger. (*Id.* at 12-13). But Defendant fails to acknowledge the Plan's Form 5500 disclosures from 2016 to 2022 each of which state the Plan was "established January 1, 1992" and that the "Plan has been

amended and restated throughout the years ….."  Further, Defendant does not cite to any authority to signify the import of the 2019 merger, when the record shows that Defendant also merged with Abliene Motors in 2020, National Tractor Trailer School in 2021, and Hayes Company LLC, 2022.  Plaintiffs assert "[i]n connection with each of these mergers, the Plan was amended to include the participants and retirement savings associated with retirement plans of the acquired companies. That is how the process always works." (Reply at 5).  The Court agrees that ERISA's fiduciary requirements would be rendered virtually meaningless and would be extinguished upon a merger or acquisition if a "new" plan was created.

Moreover, the Plan's Form 5500 disclosures from 2016 up to the most recent disclosure show that Principal Life, or one of its affiliates, has served as the Plan's recordkeeper since 2016.  The disclosures also show that from 2016 to the present, the Plan included the same challenged investments on its investment menu as alleged in the Complaint, including the American Funds Class A shares.  The evidence presented does not support Defendant's contention that there were "multiple plans[] governed by multiple committees" and that there was "no one course of conduct" sufficient to render common answers in this litigation.

Defendant also asserts any recovery by individual putative class members would involve "a highly individualized inquiry" incapable of class-wide resolution.  Not so. Plaintiffs cite to *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) where the court rebuked an argument functionally identical to the one presented by Defendant here. Plaintiffs' claims here "do not focus on injuries caused to each individual account, but rather on how Defendant's conduct affected [the Plan's] pool of assets[.]"  *Kanawi*, 254 F.R.D. at 109.  Thus, an inquiry into each Plan participant's account balance will not be necessary to determine whether Defendant breached its fiduciary duties to the Plan as a whole.  Plaintiffs have satisfied the commonality and typicality requirements.

### iii.  Adequacy of Representation

The final prong of Rule 23(a) asks whether "the representative parties will fairly

and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts consider two questions in determining whether representation is adequate: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). The issue of adequacy of representation is interrelated with the issue of standing. *Gratz v. Bollinger*, 539 U.S. 244, 263 n.15 (2003).

Defendant argues Plaintiffs lack Article III standing because they have not suffered the necessary injuries in fact to support their claims. First, Defendant asserts the evidence suggests (1) Plaintiff Woodard did not invest in any mutual funds within the ten share classes at issue and (2) Plaintiff Hagins has not invested in three of the ten share classes at issues. Second, Defendant asserts Plaintiffs are not adequate class representatives because they suffered no losses of any kind to their individual Plan accounts. Defendant's arguments, again, are unpersuasive.

"When assessing Article III standing in class action lawsuits, the Ninth Circuit has adopted the so-called 'class certification approach.'" *Johnson v. Providence Health & Servs.*, 2018 WL 1427421, at *3 (W.D. Wash. Mar. 22, 2018) (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)). Under the class certification approach, "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded . . . ." *Melendres*, 784 F.3d at 1262. In ERISA class actions, "courts have found that plaintiffs bringing claims regarding underperforming funds can demonstrate the requisite injury where they either (i) invested in *at least one* of the challenged funds or (ii) challenge a 'plan-wide' decision-making process that injures all plan participants." *In re Sutter Health ERISA Litig.*, 2023 WL 1868865, at *5 (E.D. Cal. Feb. 9, 2023) (emphasis in original) (collecting cases).

Plaintiffs have demonstrated both types of injuries described in *Sutter*. First, it is undisputed Plaintiff Hagins invested in at least seven class shares at issue. Second, Plaintiffs assert plan-wide mismanagement that "sweep beyond their own injuries on behalf

of the Plan and other plan participants." *Sutter*, 2023 WL 1868865, at *5. The Complaint alleges:

> Plaintiff[s] have standing because the challenged conduct, including Defendant's actions resulting in Plaintiff and the Plan participants paying excessive recordkeeping and administrative fees, and being limited to investing in expensive investments when identical investments were available at a lower cost. All Plan participants were affected by Defendant's imprudence in the same way.
>
> * * *
>
> For example, Plaintiffs' individual accounts in the Plan suffered losses because, in fact, each participant's account was assessed an excessive amount for recordkeeping and administrative fees, which would not have been incurred had Defendant discharged its fiduciary duties to the Plan and reduced those fees to a reasonable level.

(Compl. ¶¶ 23–24). Defendant asserts Plaintiff Hagins never paid any challenged recordkeeping fee during the relevant time period. However, Plaintiff Hagins' quarterly statements indicate that "For American Fund A shares, in addition to the amount shown in Revenue Sharing to Recordkeeper column, Principal Life receives $12 per year for each participant with retirement funds in American Funds A shares in plans recordkept by us." Thus, each Plan participant, including both named Plaintiffs, pay a recordkeeping fee and therefore have standing to challenge the recordkeeping fees on behalf of the Plan.

Likewise, Plaintiffs have sufficiently alleged a concrete injury as to their breach of fiduciary duty claim. Plaintiffs' expert Ty Minnich averred the high-cost "retail" share class that Defendant's expert Steven Gissiner declared received greater credits than the low-cost "investor" share benefitted the recordkeeper, not the Plan itself. *See Wit v. United Behavioral Health*, 79 F.4th 1068, 1082-83 (9th Cir. 2023) (holding plaintiffs sufficiently alleged a concrete injury where they showed a material risk of harm to their "ERISA-defined right to have their contractual benefits interpreted and administered in their best interest and in accordance with their Plan terms"); *see also Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990) ("Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or participant."). / / /

### B.  Rule 23(b)

In addition to establishing the Rule 23(a) elements, Plaintiffs must satisfy one of the three subsections of Rule 23(b).  Fed. R. Civ. P. 23(b).  Plaintiffs seek class certification under Rule 23(b)(1).  A class action is appropriate pursuant to Rule 23(b)(1) if prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). "A 'classic' example of such a case is one charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust.'" *Urakhchin v. Allianz Asset Mgt. of Am., L.P.*, 2017 WL 2655678, at *7 (C.D. Cal. June 15, 2017) (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999)); *Kanawi*, 254 F.R.D. at 108 ("Most ERISA class action cases are certified under Rule 23(b)(1).").

Defendant's arguments opposing Plaintiffs' satisfaction of Rule 23(b)(1) have been rejected by several courts within the Ninth Circuit.  For example, in *Urakhchin*, a similar ERISA breach of fiduciary duty class certification claim, the court explained "Plaintiffs seek monetary relief for the Plan as a whole based on the theory that Defendants breached their fiduciary duties to the Plan by improperly managing the Plan assets for their own benefit.  If this claim were brought by an individual Plan participant, any judgment on Defendants' liability would necessarily affect the determination of any claim for monetary relief for this same conduct brought by other Plan participants in any concurrent or future actions." *Urakhchin*, 2017 WL 2655678, at *8.  The court in *In re Prime Healthcare ERISA Litig.*, 2023 WL 9319290, at *8 (C.D. Cal. Dec. 28, 2023) rejected the same argument made by Defendant here that a finding by one court that certain actions of Defendant did

or did not breach their fiduciary duties would be nothing but legal precedent in a subsequent action brought by a different plaintiff. "But as explained in *Urakchin*, the earlier suit would likely dictate—not just, influence—the follow-on claim suit through collateral estoppel." *Prime Healthcare* 2023 WL 9319290, at *8. The Court finds Plaintiffs have satisfied the requirements of Rule 23(b)(1).

### C. Appointment of Class Representatives and Class Counsel

The Court finds that Plaintiffs Hagins and Woodard will adequately represent the class under Rule 23's requirements. Thus, the Court will appoint them as class representatives. The court must appoint class counsel when certifying a case as a class action pursuant to Rule 23(g). The court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g). Having reviewed their submissions, the Court is satisfied that Plaintiffs' counsel should serve as class counsel. Accordingly, the Court appoints McKay Law, LLC, Morgan & Morgan, P.A., and Wenzel Fenton Cabasa, P.A. as class counsel.

Accordingly,

**IT IS ORDERED** Plaintiffs' Motion for Class Certification (Doc. 43) is **GRANTED**. Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), the Court certifies the class as: All persons who were participants in or beneficiaries of the Knight-Swift Transportation Holdings, Inc. Retirement Plan, at any time between October 26, 2016 and the present.

**IT IS FURTHER ORDERED** the Court appoints Plaintiffs Hagins and Woodard as class representatives.

/ / /

/ / /

/ / /

- 9 -

1    **IT IS FURTHER ORDERED** the Court appoints the law firms of McKay Law,

2  LLC, Morgan & Morgan, P.A., and Wenzel Fenton Cabasa, P.A. as class counsel pursuant

3  to Federal Rule of Civil Procedure 23(g).

4    Dated this 19th day of March, 2025.

5

6

7    _____
    Honorable Roslyn O. Silver
8    Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28